Reginald CHILDS, Appellant,

v.

PENNSYLVANIA FEDERATION BROTHERHOOD OF MAINTENANCE WAY EMPLOYEES, and National Railroad Passenger Corporation, Appellee.

No. 86–1555.

United States Court of Appeals, Third Circuit.

Argued Feb. 23, 1987.

Decided Oct. 19, 1987.

---

Andrew F. Erba (argued), Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Dennis Morikawa, Morgan, Lewis & Bockius, Philadelphia, Pa., Robert A. McCullough (argued), Asst. Gen. Counsel, Nat. R.R. Passenger Corp., Washington, D.C., for appellee Nat. R.R. Passenger Corp.

William J. Birney (argued), Highsaw & Mahoney, P.C., Washington, D.C., for appellee Broth. of Maintenance of Way Employees.

Before WEIS, BECKER and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal, arising out of a suit by a railroad employee against his union for breach of its duty of fair representation (DFR) and against the railroad for breach of the collective bargaining agreement, presents two questions. First, we must determine whether the district court erred in granting summary judgment for the union on the ground that the six month statute of limitations has run on the DFR suit, a determination which turns primarily on the date of accrual of the claim. Second, we must determine whether the district court erred in granting summary judgment for the railroad on the ground that it could not exercise subject matter jurisdiction over the employer-railroad in the contractual dispute, because of the minor dispute provisions of the Railway Labor Act, even where the union's breach of its duty of fair representation allegedly prevented the employee from gaining full relief in front of the National Railroad Adjustment Board (NRAB or the Board).

We hold that where the union continued to represent the employee before the NRAB, and tried to remedy the breach of its duty of fair representation, the employee's action against the union did not accrue until the Board rejected the employee's claim. As to the second issue, we hold that the district court possesses subject matter jurisdiction over the employer-railroad. In reaching this result, we join the Second and Sixth Circuits in recognizing a fourth exception to the general rule that minor contract disputes between an employee and an employer-railroad fall within the exclusive jurisdiction of the NRAB (the other three are inapplicable here). The exception provides that an employee may sue his railroad-employer in federal court where, because of a union's breach of its duty of fair representation, the employee cannot obtain meaningful relief before the Board.

We therefore reverse the grants of summary judgment and remand for a consideration on the merits of Childs' claim against the union, the existence of subject matter jurisdiction over the railroad (this will depend on the applicability of the fourth exception), and the merits of Childs' claim against the railroad if subject matter jurisdiction is found to exist.

## I. FACTS AND PROCEDURAL HISTORY

Appellant, Reginald Childs, was employed by the National Railroad Passenger Corporation (Amtrak) from 1977 to 1981. In August 1981, Amtrak informed him that because of a reduction in force it would abolish his position as a trackman. It also notified Childs that under Rule 18 of the collective bargaining agreement between Amtrak and the Pennsylvania Federation Brotherhood of Maintenance of Way Employees (the union), he had ten days in which to exercise his seniority rights and displace junior employees—what is known as "bumping" into another position. Amtrak claims that Childs failed to comply with the provisions of Rule 18 by appearing at the approved place and time to exercise his bump, and thereby forfeited his seniority. Childs rejoins that on September 3, 1981, the day before the deadline to exercise his bumping rights, he completed "bump-slips" for a surfacing crew but received incorrect information concerning the new crew's shift and location. He claims that he arrived in time but, through no fault of his own, went to the wrong location, causing his technical non-compliance and invalidating his bump.

Childs contacted the union which, on September 28, 1981, submitted a grievance on his behalf requesting his reinstatement with seniority rights intact. Childs claims that he provided the union with a list of witnesses who saw him arrive at the incorrect location before the deadline for exercising his seniority bump. Amtrak denied the claim. The union rejected Amtrak's decision as unsatisfactory and asked that Childs' request for reinstatement be listed for discussion.

On June 28, 1983, following further discussion, Amtrak issued its final decision, denying Childs' grievance. Amtrak maintained that a review of the record disclosed no evidence that Childs had properly exercised his seniority rights. Amtrak also found that the union had failed to present any probative evidence to support Childs' contention that he had arrived on time at a different location or had otherwise exercised his bump.

Throughout the entire on-property appeal process, Childs received copies of the union's written submissions and Amtrak's written denials, which set forth information underlying each party's grievance position. In its final two denial letters, Amtrak noted the absence of any evidence corroborating Childs' claim or refuting Amtrak's evidence. During this on-property appeal process, from September 28, 1981 through July 13, 1983, Childs neither submitted a witness list to Amtrak nor contacted Amtrak regarding the list's apparent absence.

After a review of Childs' case, the union advised him that it had determined not to submit his case to the NRAB. The union based its decision, in part, upon the lack of documentary evidence to support Childs' contention that he arrived at the appropriate location to exercise his bump before the deadline. The letter advised that, although the union had concluded that the case did not warrant further handling, Childs could pursue the case before the Board on his own or through counsel of his choice. The letter enclosed the Board's Rules of Procedure which provide, in pertinent part, that "all data submitted in support of the employees' position must affirmatively show the same to have been presented to the carrier and made a part of the particular question in dispute." 29 C.F.R. § 301.5(d).

Childs retained counsel to intercede on his behalf. On June 13, 1983, counsel wrote the union expressing Childs' concern over the union's failure to assist Childs in processing his claim. The letter enclosed a copy of Childs' witness list and noted that Childs had previously provided the union with such a list. Counsel requested that the union reconsider its decision not to pursue Childs' claim.

In light of its receipt of the list, the union decided to represent Childs in front of the Board. Intra-union correspondence indicates that union officers advised the local union office that additional time would be needed to follow up on the testimony of the workers on the witness list. Also, this correspondence indicates that the

local union representative was aware that to win the case, Childs' file would have to be reopened.

The union requested a two-month extension from Amtrak. By letter dated August 3, 1983, Amtrak agreed to a two-month extension of time, "but only upon the condition that the case files in these matters [would be] closed and that no new contention will be raised by [the union] during the period of this extension." The union accepted this condition.

By letter dated August 25, 1983, the union advised Childs' attorney that: (1) Amtrak had refused to accept any new evidence or to discuss appellant's case further; (2) Amtrak had agreed to extend the time limits applicable to Childs' case only if the union agreed to close the case file and to refrain from raising any new contentions during the period of extension; (3) the union had first received the witness list from Childs' counsel on June 13, 1983; (4) early in the grievance process the union had requested that Childs provide documented proof to support his claim, but that he had failed to do so; and (5) the list Childs allegedly had provided to the union was not part of the file and there was no record that such a list had ever been received.

On September 2, 1983, Childs' counsel responded to the August 25 letter. He stated that by agreeing to an extension of time during which no new contentions could be raised, the union "breached its duty to fairly represent Mr. Childs." On September 9, 1983, the union responded to the letter from Childs' counsel as follows: "Under the circumstances we have no alternative except to prepare and present [Childs'] case to the National Railroad Adjustment Board on the basis of the record compiled on the property up to and including July 26, 1983."

On September 15, 1983, Childs' counsel wrote the union stating that he was "unsure" whether the on-property record included the list of employees who saw Childs at West Yard, and requested clarification of this matter. In a letter dated September 20, 1983, he received the following response: "Although there does appear to be a question as to whether or not said list of signatures was made a part of the record in this case we do intend to use that list in the preparation of our submission."

On October 26, 1983, the union filed its submission with the Board. The submission included a copy of the witness list provided by Childs' counsel in support of Childs' contention that he properly exercised his seniority rights.

On January 15, 1985, Childs' attorney spoke by phone with a union staff assistant who advised him that his personal attendance at the Board meeting was not necessary, that the union would present argument (including reference to the list provided by plaintiff), and that the "case was a good one."

On January 21, 1985, the NRAB heard Childs' case. On February 28, 1985, it denied Childs' grievance issuing the following statement:

> Based upon our review of the on-property handling we find that the petitioner failed to prove that Carrier's actions were in violation of the agreement. It is well settled that evidence, issues, and defenses not raised in the on-property handling may not be raised for the first time before the Board.

On August 29, 1985, Childs sued Amtrak and the union in United States for the Eastern District of Pennsylvania. In his complaint he alleged, *inter alia*, that: (1) the union's failure "to investigate, secure and admit evidence known or available to them ...," violated the union's duty of fair representation; (2) "by failing to fully present plaintiff's case the union undermined and tainted the bargaining process in violation of the duty of fair representation;" and (3) the union and Amtrak "acted jointly to abrogate the obligation to fairly resolve matters set out in the Railway Labor Act, 45 U.S.C. § 151 *et seq.*"

On July 17, 1986, the district court entered an order granting defendants' motions for summary judgment. It dismissed the duty of fair representation claim as being barred by the six-month statute of limitations. It also dismissed what it ap-

propriately recast as a breach of contract claim against Amtrak, finding that such a claim constituted a minor dispute over which the district court lacked subject matter jurisdiction. This appeal followed.

## II. THE STATUTE OF LIMITATIONS

### A. *Introduction and Statement of Contentions*

It is necessary at the outset to review briefly the relevant federal legislation. Childs brings this suit under the Railway Labor Act (RLA), which is analogous to the Labor Management Relations Act (LMRA) and applies to railways and airlines. Under both acts, an employee may sue the union for breach of its duty of fair representation (DFR) in federal court. Under the LMRA employees may also bring against their employers in the same action what is known as a hybrid § 301–DFR suit. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Scott v. Local 863 International Brotherhood of Teamsters,* 725 F.2d 226 (3d Cir.1984). In such hybrid suits, the same statute of limitations applies against both the union and the employer. *See Butler v. Local Union 823, International Brotherhood of Teamsters,* 514 F.2d 442, 448 (8th Cir.1975) (quoting *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1252 (2d Cir.1970), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). As discussed below, there is some question whether such hybrid suits may be brought under the RLA. A key difference between the two acts is that while the LMRA prohibits an employee from proceeding administratively against his employer without the support of his union, under the RLA an employee may bring a grievance to his employer or the NRAB on his own. A second unique facet of the RLA is that, as a general rule, an employee can only bring a claim against the railroad before the NRAB, and federal courts normally do not have jurisdiction over disputes arising out of the collective bargaining agreement.

Construing the complaint liberally, *see Czosek v. O'Mara,* 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21 (1970), we find that Childs asserts a DFR claim against the union and a breach of contract claim against Amtrak. It is undisputed that the statute of limitations for a DFR claim against a union under the Railway Labor Act (RLA) is six months. *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188 (3d Cir. 1984) (applying the Supreme Court's reasoning in *DelCostello v. International Board of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983)). *See also Lewis v. International Brotherhood of Teamsters,* 826 F.2d 1310 (3d Cir. 1987) (affirming the six month limitation for DFR suits under the RLA). If the court exercises subject matter jurisdiction over the railroad, *see* Part III *infra,* then, by analogy to the LMRA, the same statute of limitations would apply to both the claim against the railroad and the DFR claim against the union.

Because our decision turns upon the order of events, we will review the important dates for assessing the accrual date of the statute of limitations. On August 25, 1983, the union informed Childs' attorney that it had agreed to Amtrak's request to close the file in Childs' case. On September 2, 1983, Childs' counsel wrote the union that its agreement to close the file, foreclosing the introduction of Childs' witness list, breached the union's DFR. On October 29, 1983, the union filed Childs' grievance with the Board. On February 28, 1985, the Board denied Childs' claim. Finally, on August 29, 1985, Childs brought this action against the union and Amtrak.

Appellees, the union and Amtrak, claim that Childs filed his action too late to meet the six month statute of limitations. They contend that if the union breached its DFR, the breach occurred on August 25, 1983, when the union agreed to close the file on any new evidence, hence prohibiting the introduction of Childs' witness list. They argue that the statute of limitations on Childs' DFR action therefore began to accrue when Childs became aware of the file's closing and that the limitations period has long since run. Moreover, they argue that the procedural rules of the NRAB clearly prohibit parties from introducing any new evidence after the on-property file

is closed. They submit that any expectation on Childs' part that the union would be able to introduce the witness list was unreasonable and Childs should have initiated his action within six months of the discovery of the union's breach.

Childs contends that the appropriate date for accrual of his cause of action against the union is not the date of the union's decision to close the file, but the date of the NRAB's final decision. He argues that when a union continues to represent an employee before the Board, the employee should be allowed to see the administrative process through to completion without having to sue the union at the same time. He distinguishes his case from a case in which the union refuses to represent the employee at all. Where the union continues to represent the employee, Childs argues, judicial economy and fairness to the employee demand that the cause of action not accrue until the employee has actually lost before the Board. Alternatively, Childs argues that even if the cause of action had accrued when the union agreed to close the file, principles of equitable tolling and estoppel apply to save his cause of action. Because we agree with Childs on the accrual issue, we need not reach the other alternative arguments.

### B. *Accrual of the DFR Claim*

■ Childs' argument that his claim did not accrue until the Board denied his claim has strong support in the hybrid § 301–DFR caselaw. In *Galindo v. Stoody Co.,* 793 F.2d 1502 (9th Cir.1986), the court considered the claim of an employee who sued his union and his employer in a hybrid § 301–DFR suit. The court found that "where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the the [sic] employee learns of the arbitrator's award." *Id.* at 1509 (citation omitted). Similarly, in *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558 (11th Cir. 1986), the court, on sua sponte reconsideration, held that the cause of action in a hybrid § 301–DFR claim only arose on the date of "final action." The court explained: "By final action we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." *Id.* at 1559. *See also Acri v. International Association of Machinists,* 781 F.2d 1393, 1396 n. 1 (9th Cir.1986) (the traditional approach to accrual in DFR cases is that cause of action for DFR does not accrue until the arbitrator renders his decision), *cert. denied,* —— U.S. ——, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986); *Butler v. Local Union 823, International Brotherhood of Teamsters,* 514 F.2d 442, 449 (8th Cir.1975) (date of accrual of DFR action against union is date of grievance rejection); *Clark v. Local 95, International Union of Operating Engineers,* 588 F.Supp. 1371 (W.D.Pa.1984) (same); *see also Larry v. Penn Truck Aids, Inc.,* 94 F.R.D. 708, 715 (E.D.Pa.1982) (generally, a cause of action against a union for breach of its DFR does not accrue until a final arbitration award rejects the employee claim and the employee learns of the union's breach).

Moreover, in an analogous case, dealing with a union member's claim against a union for an intra-union grievance, we held that "[i]t is clear as a matter of law ... that the statute of limitations does not begin to run while the union member undertakes to exhaust internal union appeal procedures." *Lewis v. International Brotherhood of Teamsters,* 826 F.2d 1310, 1317 (3d Cir.1987).

Two policies underlie the view that the statute of limitations does not accrue until the employee loses his claim before the Board. First, it seems inefficient and unwise to compel an employee to sue his union in federal court while the union continues, in good faith, to pursue the employee's claims and attempts to remedy any past breach of its DFR. If the union can indeed remedy the cause of the employee's dissatisfaction, it should be allowed to do so, thus obviating federal judicial involvement. This policy applies with special force in the area of labor disputes, where Congress has evidenced its desire to resolve disputes through arbitration. *See*

*United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

Second, in this case the employee faces a double disincentive to initiating a DFR suit. Not only would such action seem inefficient and premature, but suing the union that is representing him in front of the Board might also jeopardize his chances of winning against the railroad in that administrative forum. Requiring an employee to sue his union as soon as he discovers the union's breach would place the employee in an untenable situation—if he waits to sue the union he may lose the right to do so, but if he sues the union immediately he may antagonize the best possible champion of his cause.

Appellees argue that policies articulated in § 301–DFR cases cannot apply to a case brought under the RLA. Because employees under the RLA may sue on their own (as opposed to employees under the LMRA who must be represented by the union) they argue that the union exercises less power over the RLA employee and the employee risks less by antagonizing the union. This argument however ignores the union's *de facto* clout. *See* Part III, *infra*. Indeed, the difference between the two statutes cuts the other way—the policy that the claim does not accrue until the Board has rejected the employee's claim is stronger in the RLA context where the arbitration mechanism generally provides the exclusive forum for suit against the employer. Certainly an employee will have great incentive to see the administrative process through when so much depends on the Board's determination. Therefore, we should not penalize Childs for exhausting his administrative remedies, with the assistance of the union, before suing the union itself.

Appellees make two arguments that the statute of limitations must accrue as soon as the employee reasonably should have known of the union's breach. First, they

rely on case language that holds that the statute of limitations begins to run as soon as the employee is aware of the union's breach. Many of these cases, however, involved unions' refusals to pursue employees' grievances. *See, e.g., Lewis v. International Brotherhood of Teamsters*, 826 F.2d 1310 (3d Cir.1987); *Hersh v. Allen Products Co.*, 789 F.2d 230 (3d Cir.1986); *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *Aarsvold v. Greyhound Lines*, 724 F.2d 72 (8th Cir.1983) (per curiam), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3538, 82 L.Ed.2d 842 (1984). In such cases the courts were able to select the date of the clear refusal as the date for the accrual of the statutes of limitations in a suit against the union. Where the union continues to represent the employee, however, fixing a date for breach is more difficult and the policies discussed above counsel that the claim should not accrue until the employee discovers that the Board rejected his claim.

Other cases holding that breach of DFR claims accrue on the date of the union's breach involved intra-union grievances in which the employee was already pitted against the union. *See, e.g., Santos v. District Council of New York and Vicinity*, 619 F.2d 963 (2d Cir.1980). These cases are distinguishable because the union and the employee are adversaries in every forum and, unlike Childs, the employee does not rely on the union to represent him.[1]

A second line of reasoning advocated by the appellees stems from *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and *Clayton v. International Union*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). These Supreme Court cases hold that employees need not exhaust intra-union appellate procedures or other arbitration mechanisms when they are clearly futile. Appellees argue that, in the wake of *Vaca* and *Clayton*, the statute of limitations must begin to run as soon as resort to further grievance mechanisms be-

---

**1.** *But see Former Frigidaire Employee Ass'n v. Int'l Union of Electrical, Radio and Machine Workers*, 573 F.Supp. 59 (S.D.Ohio 1983) (plaintiff-employee's hybrid § 301–DFR action ac-crued when the union breached, despite continued representation), *aff'd*, 769 F.2d 330 (6th Cir.1985).

comes futile. They argue that Childs should have apprehended such futility once the union closed its file (on August 25, 1983). Therefore, they contend the six month statute of limitations began to run on that date.

We reject appellees' argument for two reasons. First, it may be impossible to pinpoint the date an employee should have known further action would be futile. In *Scott v. Local 863, International Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir.1984), we discussed the difficulty of "establishing when the futility of further union appeals became apparent or should have become apparent to the [union members]." *See also id.* at 230–31 (Becker, J. concurring) (discussing the unfairness of foisting such a "guessing game" upon union members and arguing that the statute of limitations accrues only once the union has unequivocally announced that further proceedings on the part of the employee would be futile). In this case, Childs received mixed signals from the union about the likelihood of the Board's considering his witness list. It, therefore, cannot be said with certainty that Childs reasonably should have realized the futility of further administrative proceedings.

Second, we believe that appellees' interpretation of *Vaca* and *Clayton* subverts congressional policy, and is contrary to the intent of the Supreme Court, which provided the employees in *Vaca* and *Clayton* with flexibility. Logically, one may distinguish between the right to sue before administrative grievances have been exhausted and the duty to do so. However, we believe that imposing such a *duty* would exact a heavy toll on the policy favoring administrative resolution of labor problems and would clog the federal courts with premature, defensive lawsuits.

We therefore hold that because the union continued to represent Childs, the cause of action did not accrue until the Board rejected Childs' claim. In so holding, we acknowledge that Childs and his attorney were aware of deficiencies in the union's representation that later formed the basis for Childs' DFR suit. It is tempting, at first blush, to conclude that Childs' claim accrued when the union had closed the file on his case and foreclosed him from introducing the witness list. Certainly Childs' attorney supplied the union with evidence for this line of argument when he warned the union that it may have breached its DFR. We believe, however, that because the union continued to represent Childs, and proffered rays of hope concerning the possibility of introducing the evidence to the Board and recouping Childs' seniority,[2] the claim did not actually accrue until the Board rejected Childs' appeal. The policies discussed above of (1) avoiding unnecessary federal litigation, (2) allowing the administrative procedure "full play," and (3) sparing the employee the Hobson's choice between letting the statute of limitations run and antagonizing his best advocate, all dictate that the cause of action accrue only once the Board rejects the employee's claim. Since Childs brought suit within six months of the Board's decision, the grant of summary judgment on statute of limitations grounds must be set aside.[3]

## III. SUBJECT MATTER JURISDICTION OVER THE COLLECTIVE BARGAINING CLAIM

■ We turn to the question whether the district court can exercise subject matter jurisdiction over the contract dispute between Childs and Amtrak. Generally, the

---

**2.** The union did include the witness list in its October 26, 1985 NRAB submission.

**3.** In holding that the claim does not accrue until after the NRAB's final decision, we realize that some assiduous plaintiffs may be forced to delay bringing meritorious DFR claims while the union continues to represent the employee before the Board even though such representation is fruitless. In deciding that the claim does not accrue until the Board issues its final decision we weigh competing federal labor law policies. By making the plaintiff wait, we disserve the policy of avoiding futile administrative procedures. This policy is outweighed, however, by the important federal policies of deference to arbitration, avoidance of unnecessary lawsuits, and certainty as to when the statute of limitations begins to run.

RLA, 45 U.S.C. § 153 (1982) provides the Board with exclusive jurisdiction over contract disputes between employees and the railroad. *See Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). The Supreme Court in *Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 722-25, 65 S.Ct. 1282, 1289-90, 89 L.Ed. 1886 (1945), *aff'd,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946), articulated the traditional distinction between "major" disputes, in which the federal court possesses jurisdiction, and "minor" ones, in which it does not. Major disputes concern the formation or alteration of collective agreements; minor disputes involve the application of a valid agreement to a specific grievance. *See Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). The rationale for this dichotomy derives, in part, from Congress' perception that the Board possesses the expertise and the administrative mechanisms to handle "minor" disputes efficiently and fairly. Childs' grievance is unquestionably a minor dispute.

One important policy of the RLA, however, is to afford employees means for redress. *See Kaschak v. Consolidated Rail Corp.,* 707 F.2d 902, 907 (6th Cir. 1983). Therefore, courts have formulated exceptions to the jurisdictional scheme of the RLA where it appears that without such access to the federal courts the employee's right to redress would be jeopardized.

Three of our cases discuss the general rule granting the Board exclusive jurisdiction over minor grievances and address possible exceptions to that rule. In *Goclowski v. Penn Central Transportation Co.,* 571 F.2d 747 (3d Cir.1977), we affirmed our fidelity to the jurisdictional scheme of the RLA, holding that: "The plaintiff's claim for damages based on a breach of the basic collective bargaining agreements is a minor dispute not properly before a federal court." 571 F.2d at 761. The panel explained: "We defer to the expertise of the Board in construing railroad labor contracts." *Id.* at 755 (citing the Fifth, Seventh, and Eighth Circuits and the Supreme Court).[4]

In *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1190 (3d Cir.1984), an employee sued the railroad and his union for loss of his seniority rights. The panel delineated three exceptions to the exhaustion requirement in actions concerning minor disputes:

(1) when the employer repudiates the private grievance machinery; (2) when resort to administrative remedies would be futile; and (3) when the employer is joined in a DFR claim against the union.

*Id.* at 1190 (citations omitted). It found that none applied in Sisco's case and held that the federal judiciary had no subject matter jurisdiction over Sisco's minor dispute. In a footnote, the Court considered a possible fourth exception, based on *Kaschak v. Consolidated Rail Corp.,* 707 F.2d 902, 905-12 (6th Cir.1983). The *Kaschak* exception provides that when, because of a breach of the DFR by the union, an employee loses the right to press his grievance before the Board, he may sue the railroad in federal court. In *Sisco,* however, the court determined that the employee had made no allegations concerning the right to process his grievance before the Board, and therefore the court did not have to address the question. *See Sisco,* 732 F.2d at 1191 n. 1.

Finally, in *Masy v. New Jersey Transit Rail Operation Inc.,* 790 F.2d 322 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 320, 93 L.Ed.2d 293 (1986), the panel affirmed the district court's dismissal of a contract claim by a railroad employee for lack of subject matter jurisdiction. The court discussed the three exhaustion of remedy exceptions enunciated in *Sisco* and applied them to the question of subject

---

4. The panel found that it possessed subject matter jurisdiction over the separate claim that the contract was invalid because the membership had not ratified it and the employer was a necessary party to that inquiry. Although the Court's reasoning of *Goclowski* on this point is unclear, it seems to allow jurisdiction over the claim against the railroad based on the third exception to the general jurisdictional rule of *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188 (3d Cir.1984) (employer joined in a DFR suit) discussed next.

matter jurisdiction, finding none availing. In so doing, it explained the general rule that minor grievances fall within the exclusive jurisdiction of the Board and discussed the policy rationales behind the three *Sisco* exceptions, construing them very narrowly.

We find that none of the three *Sisco* exceptions, as explicated by *Masy*, apply to Childs. The first exception, that the employer repudiated the grievance machinery, cannot apply because Childs, though he failed to exercise it, always had the right to petition the Board directly without the aid of the union. In essence, his grievance stems from the union's alleged failure to forward his witness list to Amtrak and from the union's agreement to close the file. Additionally, therefore, any failure in the grievance mechanism did not stem from any repudiation by the railroad of the grievance machinery. *See Masy*, 790 F.2d at 326.

The second exception, that resort to administrative remedies would be futile, is more complicated. This exception derives, in part, from *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), which held that where racial discrimination renders the grievance mechanism futile, an employee need not exhaust administrative remedies. *See also Raus v. Brotherhood Railway Carmen*, 663 F.2d 791 (8th Cir.1981) (collusion between union and railway employer represents exception to exclusive Board jurisdiction over minor disputes). The only case to rely on the second *Sisco* exception involved an employee who failed to bring his dispute to the Board because the Board had recently rejected a nearly identical claim. *Linder v. Berge*, 739 F.2d 686 (1st Cir.1984). The *Linder* court's inquiry centered upon the futility of seeking a favorable outcome because of the Board's predisposition. *Id.* at 687–88 n. 1.

It is true that in this case by the time the union transmitted the witness list the file had been closed, hence Childs' attempt to bring his grievance to the Board may have seemed futile. However, this futility was not created by the Board but by the failure to transmit a witness list. Bringing the claim to the Board would not, as a general matter, have been futile because of the Board's predisposition or prejudice. The futility exception, fairly construed, does not apply.

The third *Sisco* exception involves the situation where the employer has been joined in a DFR suit. In discussing this third exception, *Masy* noted that the Supreme Court and this court had left open the question whether the employer may be joined to the DFR claim where no facts tie the employer to that claim but the employer's presence is necessary for relief (the relief sought in *Masy* was merger of seniority lists and the employer was a necessary party for that order to be effective). In dicta the *Masy* panel observed: "To the extent that the presence of the employer is necessary for complete relief in the breach of the duty of fair representation claim against the union, the presence of the employer should not be a means of circumventing the NRAB's exclusive jurisdiction over minor contractual disputes." 790 F.2d at 327. The panel found that although it might be appropriate to join the railroad in a DFR claim where the court might order binding arbitration or some similar remedy, it is not appropriate for minor contractual disputes. However, the panel then held it unnecessary to join the employer, even for a limited purpose, because the DFR claim had been properly dismissed on a motion for summary judgment. *Id.*

■ Significantly, however, *Masy* did not mention the fourth possible exception. In *Masy* the fourth *Kaschak* exception could not have applied. The employees in *Masy* were not prevented from addressing the Board, indeed they petitioned it directly and lost. Although they sued the union for breach of its DFR, they did not allege that the union's breach prevented them from pursuing their claims against the railroad before the NRAB. We therefore consider the fourth possible exception enumerated in *Kaschak* and cited in a footnote in *Sisco*. Under that exception, where a breach of the DFR by the union causes the employee to lose his right to press his grievance

before the Board, the employee may sue the railroad in federal court.[5]

Childs argues that we should adopt the approach of the Sixth Circuit in *Kaschak* and the Second Circuit in *Schum v. South Buffalo Railway Co.*, 496 F.2d 328 (2d Cir.1974) recognizing this fourth exception. In *Kaschak*, a union failed to process an employee's grievance in time and the employee lost the right to have his grievance considered by the NRAB. In holding that the employee could sue the railroad as well as his union in federal court, *Kaschak* emphasized the importance in the RLA and all federal labor legislation "of compensating the individual employee for injuries caused by a violation of his or her rights." 707 F.2d at 907. The Sixth Circuit drew an analogy to *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), which permits a hybrid DFR–breach of contract suit against the employer under the NLRA. In *Vaca*, the Supreme Court held that

> the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.

386 U.S. at 186, 87 S.Ct. at 914 (footnote omitted). The *Vaca* Court held that "[t]o leave the employee remediless in such circumstances would ... be a great injustice." *Id.* at 185–86, 87 S.Ct. at 914. *Kaschak* reasoned that the barrier to suing the railroad similarly falls when a union's breach of its DFR prevents an employee from bringing his claim before the Board.

This analogy to *Vaca* also persuaded the Second Circuit in *Schum v. South Buffalo Railway Co.*, 496 F.2d 328 (2d Cir.1974), to hold that federal subject matter jurisdiction existed over a claim against a railway company for breach of its collective bargaining agreement where the union's actions prevented the employee from bringing his claim before the NRAB. In *Sisco*, we cited *Schum* for the proposition that legitimate exceptions exist to the NRAB's exclusive jurisdiction over contract claims arising out of the collective bargaining agreement. *See Sisco*, 732 F.2d at 1190. Amtrak argues that an employee's ability to sue on his own under the RLA represents a crucial distinction and prohibits us from following *Kaschak* and *Schum* and applying the policies of *Vaca* in the RLA context. Unlike employees covered by the LMRA, individual employees governed by the RLA may sue on their own and do not require union support or participation. *See supra* 433–34. Hence, they are not, at least *de jure*, held hostage by the union's failure to represent them fairly and the policy underlying *Vaca* cannot apply.

The *Kaschak* and *Schum* courts confronted this argument and acknowledged that the analogy to *Vaca* in the RLA context is imperfect. *See Kaschak*, 707 F.2d at 905–06. However, we join these two courts in finding that this distinction is not "sufficiently meaningful to justify the dismissal of the suit." *Schum*, 496 F.2d at 331. First, as the court in *Schum* explained:

> As a general rule, grievances do not succeed without the full support of the union. Normally employees do not have the expertise, knowledge or experience to

---

**5.** Unquestionably, some tension exists between the dictum in *Masy* concerning the third exception and our recognition today of the exception in *Kaschak* and *Schum v. South Buffalo Railway Co.*, 496 F.2d 328 (2d Cir.1974), a case upon which *Kaschak* relies. *Masy*, in dictum, indicates that the need to join the employer to afford full relief cannot override the exclusive jurisdiction of the NRAB over minor suits. 790 F.2d at 325–26. Yet, the fourth exception arguably does just that where the union's actions prevented the employee from obtaining relief before the Board. Indeed, the *Masy* dictum itself seems to conflict with the *Sisco* opinion

upon which *Masy* relies. *Sisco* provided no such narrow reading of the third exception. *Sisco* cited *Schum* with approval and discussed the *Kaschak* case. Were we to write upon a clean slate, we might be tempted to incorporate the exception we recognize today as part of the third *Sisco* exception—that the railroad may be joined in a DFR suit where its presence is necessary for complete relief, and to eschew the apparent narrow reading of the exception in *Masy*. Out of deference to *Masy*, however, we will adopt its restrictive interpretation of the third *Sisco* exception and characterize the exception we recognize today as a new fourth exception.

interpret the complicated substantive and procedural provisions of a collective bargaining agreement. In addition, specialized skill and insight are required at the higher levels of the grievance procedures to investigate and marshall the relevant facts and law, to prepare adequate petitions and briefs, to comply with the intricate limitations periods common to all labor contracts, and to present persuasive arguments to the board of arbitration.

*Id.* We do not feel that Childs' case is any different. Given the realities of an employee's putative ability to challenge the railroad on his own, his technical ability to do so does not relieve us of the task of investigating how his union might have contributed to his failure to bring a minor grievance against the railroad to the Board. Even though Childs had an attorney, the union conducted his case, and the union alone foreclosed his introduction of the witness list. And although the union presented Childs' grievance to the NRAB, it effectively vitiated his remedy by agreeing to close his file. We find no meaningful distinction between a union's failure to press a claim and its pressing a claim in such a way that foreclosed any genuine relief.

Second, cases that have refused to recognize an exception to the exclusive jurisdiction of the NRAB are easily distinguished from Childs' case. In *Harrison v. United Transportation Union*, 530 F.2d 558 (4th Cir.1975) (per curiam), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976), the district court refused to send the question of the railroad's collusion with the union to the jury. The Fourth Circuit found insufficient evidence to support the employee's conspiracy theory and affirmed the district court. As the court noted, the question of the railroad's independent susceptibility to suit was never raised. Therefore, the *Harrison* court never considered the *Vaca* analogy. *Haney v. Chesapeake & Ohio Railroad Co.*, 498 F.2d 987 (D.C. Cir.1974), is not directly on point either. In *Haney*, the plaintiff argued for an exception to exclusive jurisdiction where "prosecution of his claim runs the risk of making his union an adversary." *Id.* at 992. In

rejecting that contention the D.C. Circuit observed that "relieving [the employee] of the exhaustion requirement would open too large a hole" in the RLA procedural scheme. *Id.* It is significant, however, that the employee argued that *any* administrative remedy would antagonize the union, because the union provided representatives to the NRAB. In *Haney*, the employee did not sue her union for breach of its DFR and faced none of the same conflicts that Childs did.

Third, the policy expressed in the Supreme Court's decision in *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), supports the exercise of subject matter jurisdiction over the railroad-employer. In *Hines*, an employee who was discharged for alleged dishonesty sued both his union (for breach of its DFR) and his employer for breach of the contract. The Court of Appeals affirmed a grant of summary judgment for the employer, holding that the finality provision of the collective bargaining agreement (analogous to the statutory limitation on federal court jurisdiction in our case) barred recovery absent a showing of conspiracy or misconduct by the employer. The Supreme Court reversed, holding that where "the Union's breach of duty taint[ed] the decision of the [arbitration] committee" the employee is "entitled to an appropriate remedy against the employer as well as the Union." 424 U.S. at 572, 96 S.Ct. at 1060. We distinguish *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) and *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), because in both cases the plaintiff chose to circumvent the administrative grievance mechanism and was not compelled by the actions of his union to turn to the federal courts. *See Kaschak*, 707 F.2d at 907.

█ The policies identified above of avoiding unnecessary judicial intervention and allowing the arbitration system full play cannot outweigh the central policy of the RLA scheme: affording railway laborers a fair and efficient means of redressing their grievances. *See* 45 U.S.C. § 151a(5)

(1982) (purpose of the RLA is "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions"). Undoubtedly, the NRAB presents the preferred forum for dealing with minor disputes. However, where the union effectively eliminates this option and frustrates the federal administrative remedy, fairness to the employee and fidelity to the underlying goals of the RLA mandate that we grant the employee a forum in federal court.

■ In holding that the district court may exercise subject matter jurisdiction over Childs' collective bargaining claim, we must emphasize our fidelity to the RLA's administrative scheme. The exception that we recognize today is a narrow one and cannot be interpreted as undermining the general rule of exclusive NRAB jurisdiction for minor disputes. Rather, in adopting the exception recognized by the Sixth and Second Circuits, we attempt to address the rare case in which the union, by breaching its DFR, effectively precludes the employee's opportunity for obtaining relief before the NRAB. In setting the standard for this fourth exception, we adopt the Sixth Circuit's specifically narrow approach. The *Kaschak* Court imposed the heavy burden on the employee-plaintiff of showing that the union's breach of its DFR precluded his recovery from the railroad, and that his reliance on the union was reasonable. 707 F.2d at 913. We agree that to sue Amtrak in federal court, Childs must meet this standard.

Therefore, while reversing the district court's grant of summary judgment for the railroad on the ground of subject matter jurisdiction over the contractual dispute, we will remand the case to the district court for a finding of whether the union's breach precluded Childs' recovery, and whether Childs' reliance on the union to represent him before the Board was reasonable. There are doubtless a number of approaches to resolution of these questions. Among the issues that might be considered are: (1) whether the union's

agreement to close the file in Childs' case effectively precluded his ability to bring his grievance before the Board; (2) whether in light of the communications between the union and Childs, Childs reasonably relied on the union to press his claim; (3) whether Childs could in any way have foreseen the union's agreement to close the file; and (4) whether the witnesses listed by Childs would have made a difference in the arbitration proceeding.

For the foregoing reasons, the judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.