# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1061

_____

B. Glenn Martin,                                       *
                                                       *
            Appellant,                                 *
                                                       *      Appeal from the United States
      v.                                               *      District Court for the Western
                                                       *      District of Missouri.
American Airlines, Inc., a Delaware                    *
Corporation; Transport Workers                         *
Union of America, Local 512, an                        *
unincorporated labor organization;
Kevin Silvas; Glen Harmon,

            Appellees.


_____

Submitted: September 13, 2004
Filed: November 30, 2004

_____

Before LOKEN, Chief Judge, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

      B. Glenn Martin ("Martin"), a former employee of American Airlines ("AA"),
brought this action for damages and reinstatement as a fleet service clerk with AA.
Martin alleged that his former union, Transport Workers Union of America, Local
512 ("TWU"), breached its duty of fair representation under the Railway Labor Act,
45 U.S.C. § 151, et seq. ("RLA"), and that AA breached the collective bargaining

agreement ("CBA") between AA and TWU by discharging him without just cause. The district court[1] granted AA's and TWU's motions for summary judgment. We affirm.

## I. Factual Background

Martin began working with AA in Dallas, Texas in 1983. He transferred to AA's Kansas City location in 1996. In the spring of 1997, Martin began working as a fleet service clerk in the air cargo facility at Kansas City International Airport ("MCI"). While employed with AA at MCI, Martin was a member of TWU, and the terms and conditions of his employment were governed by a CBA between AA and TWU.

AA terminated Martin for allegedly violating Rules 5, 16 and 34 of American Airlines Rules and Regulations.[2] AA's decision to terminate Martin was based on AA's belief that Martin claimed pay to which he was not entitled by falsifying his time-sheet entries for April 15, 2002.

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]Rules 5, 16 and 34 address employee dishonesty and misrepresentation. Rule 5 requires each employee to: "Check on or off duty in the prescribed manner and for yourself only." Rule 16 prohibits: "Misrepresentation of facts or falsification of records . . . ." Rule 34 provides: "Dishonesty of any kind in relations with the Company, such as theft or pilferage of Company property, the property of other employees or property of others entrusted to the Company, or misrepresentation in obtaining employee benefits or privileges will be grounds for dismissal and where the facts warrant, prosecution to the fullest extent of the law."

2

The air cargo facility where Martin worked did not have a time clock. Employees were required to record their time manually. On April 15, Martin was scheduled to work from 3:30 a.m. to noon. Martin's time-sheet entries indicated that he began work at "0330" and left at "1300." Martin's other entries for that day indicated one-half hour of paid lunch and a claim for one hour of overtime. A factual dispute remains as to the exact time Martin left work on April 15, based on his own inconsistent versions of the events of the day and based on different versions offered by Martin's supervisor and co-workers. However, as we explain below, this factual dispute is immaterial to our resolution of Martin's lawsuit.

On April 29, 2002, AA initiated an investigation pursuant to Article 29(f) of the CBA. Martin's supervisor, Kevin Silvas, met with Martin and TWU steward, Todd Peck, to discuss the circumstances surrounding Martin's time-sheet entries for April 15. Silvas reconvened the 29(f) hearing the next day to elicit more facts from Martin. TWU station chairman, Bob Gering, joined Peck in representing Martin during the April 30 meeting. After the April 30 meeting, Martin discussed his case with Peck and Gering. Gering told Martin that he had been speaking with AA's chief operating officer, Mary Kay Gribbons, and that he would "do his best work for [Martin] through [Gribbons]." Between April 30 and May 6, Gering had several conversations with Gribbons about Martin's case, in an effort to "find holes" in AA's case and persuade Gribbons not to terminate Martin. Despite Gering's efforts, AA concluded that Martin changed the log-out time on his time sheet from "1200" to "1300" and that he was not in the cargo facility as he represented. On May 7, 2002, AA terminated Martin for "seeking pay for time not worked," in violation of AA Rules and Regulations. That same day, Peck filled out a grievance form for Martin to sign. Martin signed the form, which included a provision authorizing TWU to act as Martin's representative in the disposition of his grievance. Martin's grievance was filed with his supervisor, thereby invoking Martin's right under the CBA to a discharge appeal hearing before Gribbons.

TWU vice presidents, Glen Harmon and Don Hahn, assumed primary responsibility for handling Martin's grievance and for advising and representing him at the discharge appeal hearing. Prior to the hearing, Harmon and Hahn reviewed all of the relevant documentation. Harmon spoke with Gering on one or more occasions and traveled to the cargo facility at MCI to familiarize himself with the physical layout of the facility. On multiple occasions, Harmon and Hahn each had telephone conversations with management representatives regarding Martin's case. Rick Rodriguez, then president of TWU, also had one or more telephone conversations with management on Martin's behalf. Harmon, Hahn and Rodriguez shared with each other all of the information they obtained in their investigation.

Harmon and Hahn concluded that the evidence against Martin was overwhelming. First, they determined numerous inconsistencies with Martin's statements regarding when he left work on April 15. In addition, they were concerned about the physical appearance of his time sheet, which they believed had been altered. They also were concerned about Martin's tone and attitude during the course of AA's 29(f) investigation. Lastly, Martin's case involved a charge of violating Rule 34, a charge which Harmon and Hahn understood to be very difficult to overcome based on past experience.

Having reached these conclusions, Harmon and Hahn attempted to negotiate a resolution with Gribbons which would reinstate Martin. Gribbons told the TWU representatives that she would be willing to reinstate Martin on a "thin ice letter," if she felt that Martin was being completely forthright at the discharge appeal hearing about what occurred on April 15. A "thin ice letter" is an agreement whereby AA reinstates an employee in exchange for a signed, undated letter of resignation from the employee, which AA can date and accept, effective immediately, if the employee violates any company rule after reinstatement.

4

Martin's discharge appeal hearing was held on May 22, 2002. On the evening before the hearing, Martin had a conference call with TWU representatives. On the day of the hearing, Martin, Harmon, Hahn and Gering met for about an hour prior to the hearing to discuss strategy. The TWU representatives emphasized to Martin that it was imperative that he be remorseful. During the hearing, Martin persisted in denying that he changed his time sheet. As a result, Gribbons determined Martin was not completely truthful during the hearing and, therefore, decided not to offer Martin a thin ice letter and denied his grievance.

On or about May 24, 2002, TWU filed a petition for arbitration on behalf of Martin pursuant to Article 32 of the CBA. This was part of TWU's standard practice of immediately filing a petition in order to preserve a grievant's rights while TWU's Executive Board decided whether to pursue arbitration. Martin claims that he was unaware TWU filed a petition for arbitration on his behalf. He alleges that on June 11, 2002, his counsel filed a petition for arbitration in accordance with Article 32 of the CBA.

TWU's Executive Board met on June 22, 2002. After considering all of the relevant documentation and questioning Harmon, Hahn and Martin, TWU's Executive Board unanimously decided not to submit Martin's case to AA's System Board of Adjustment for arbitration. On July 5, TWU informed Martin of the decision and sent a letter to TWU International asking that Martin's arbitration case be withdrawn.

Martin brought this lawsuit, alleging that TWU breached the duty of fair representation it owed to him in handling his grievance and that AA breached the CBA by discharging him without just cause. Martin also asserted a claim of defamation against Silvas, Harmon and AA. By agreement of the parties, Silvas and AA were dismissed without prejudice on the defamation claim. TWU, AA and Harmon moved for summary judgment, and the district court granted all three

motions. Martin appeals the district court's grant of summary judgment to TWU and AA. Martin did not appeal the district court's grant of summary judgment to Harmon.

## II. Discussion

We review the district court's grant of summary judgment to TWU and AA de novo. *Smith v. United Parcel Service, Inc.*, 96 F.3d 1066, 1068 (8th Cir. 1996). Viewing the record in the light most favorable to Martin, we will affirm if there is no genuine issue of material fact and TWU and AA are entitled to judgment as a matter of law. *Id.*

### A. Breach of Duty of Fair Representation

Martin initially claims that TWU breached its duty under the RLA to fairly represent him. He argues that the record, when properly viewed in a light most favorable to him, shows that his grievance was meritorious, that TWU's decision not to submit his case to AA's System Board of Adjustment was arbitrary, and that TWU handled his discharge appeal hearing and grievance in a perfunctory manner. We do not agree.

A union breaches its duty to fairly represent one of its members when its conduct is arbitrary, discriminatory, or in bad faith. *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). A breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious. *Vaca*, 386 U.S. at 195. Rather, a breach occurs when a union makes arbitrary decisions as to the merits of an employee's grievance. *Id.* at 194. Arbitrary conduct is "behavior [that] is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation omitted) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Furthermore, arbitrary decision-making as to the merits of an employee's grievance may, in some circumstances, be shown

6

where the union ignores the employee's complaint or processes the employee's grievance in a perfunctory manner. *See Vaca*, 386 U.S. at 194. A union acts in a perfunctory manner when it acts "without concern or solicitude" or gives a member's grievance "only cursory attention." *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354, 1357 (8th Cir. 1984).

The district court correctly held that Martin failed to present sufficient evidence from which a reasonable jury could find that TWU processed his grievance in an arbitrary fashion. In light of TWU's investigation and concerns about Martin's credibility, coupled with the lack of success TWU and other local unions experienced in arbitration matters involving violations of Rule 34, TWU's decision to withdraw his arbitration case from consideration was not "so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67. Furthermore, based on our review of the record, we cannot say that TWU gave Martin's case "only cursory attention." The union officials' conduct in this case–such as reviewing the relevant documentation,[3] discussing Martin's case with various management representatives, discussing strategy with each other and Martin, and attempting to have Gribbons reinstate Martin on a thin ice letter–demonstrates nothing less than "concern" and "solicitude" for Martin. TWU was not required to re-interview the various employee witnesses as Martin now claims. Its reliance on the written statements obtained by AA was appropriate. *See Brown*, 746 F.2d at 1359 (noting that failure of union representative to interview witnesses who had testified at an earlier step of the grievance procedure which the representative reviewed shows no breach of duty).

---

[3]Relevant documentation included: Martin's termination letter, AA's minutes and TWU's notes of the 29(f) meetings, Martin's written statements, the written statements of employee witnesses Shawn Stetson, Bob Edinger and Tim Downing, the minutes and notes of AA's interview of Edinger, and an original and a copy of Martin's time-sheet entries for the week of April 13-19, 2002.

Martin also argues that the district court applied an improper standard by failing to view disputed, material facts in a light most favorable to him. Granted, the facts surrounding whether Martin had a meritorious grievance against AA are disputed. However, those facts are not material to the issue in this case. As we explained above, Martin's attempt to try the merits of his grievance as part of his duty-of-fair-representation claim against TWU is misplaced. In order to determine whether TWU's conduct was arbitrary, the district court properly reviewed the facts relating to TWU's assessment of the merits of Martin's grievance.

### B.    Breach of the Collective Bargaining Agreement

Martin's second claim alleges a breach of the CBA by AA for discharging him without just cause. We first must determine whether this claim may be heard in court or whether resolution of the claim is subject to the exclusive jurisdiction of AA's System Board of Adjustment. For the reasons that follow, we hold that resolution of Martin's claim against AA lies within the jurisdiction of AA's System Board of Adjustment.

The issue of whether AA had just cause to discharge Martin requires interpretation or application of the CBA and is, therefore, a "minor dispute" under the RLA. *Bhd. Ry. Carmen v. Missouri Pac. R.R. Co.*, 944 F.2d 1422, 1426 (8th Cir. 1991). As a general rule, an airline's system board of adjustment has exclusive jurisdiction to arbitrate minor disputes, and courts are preempted by the RLA from considering such disputes. *McCormick v. Aircraft Mech. Fraternal Ass'n*, 340 F.3d 642, 644-45 (8th Cir. 2003). However, courts have recognized certain exceptions to the exclusive jurisdiction of system boards of adjustment, which, if applicable, entitle an employee to judicial review of a minor dispute.

Martin contends that four exceptions to RLA preemption apply to his claim against AA. He argues that the district court erred in concluding that no exceptions

apply, and he asks this Court to reverse and remand the claim for a trial on the merits. We agree with the district court that no exceptions apply. As a result, the RLA preempts Martin's claim against AA, and the district court does not have jurisdiction to consider the merits of his claim.

### 1.    Hybrid Exception

The hybrid exception applies "where there are good faith allegations and facts supporting those allegations indicating collusion or otherwise tying the [employer] and the union together in allegedly arbitrary, discriminatory or bad faith conduct amounting to a breach of the duty of fair representation." *Raus v. Bhd. Ry. Carmen*, 663 F.2d 791, 798 (8th Cir. 1981) (footnote omitted). In such a case, a court has jurisdiction to consider a contract violation claim against an employer. *Id.* Because we hold that TWU did not breach its duty of fair representation, we also must hold that the hybrid exception to RLA preemption does not apply to Martin's claim against AA. *See Brown*, 746 F.2d at 1357 (noting that to prevail on any claim against the employer, plaintiff must first establish unfair representation by the union).

### 2.    Contract Repudiation Exception

Martin alleges that on June 11, 2002, he filed his own petition for arbitration in accordance with Article 32 of the CBA. It is unclear whether he, in fact, did so. The record indicates that Martin's counsel sent letters to AA and TWU on June 11 setting forth Martin's version of the events of April 15. In an affidavit, Martin states that on June 11 his counsel also sent a petition for arbitration on his behalf to AA and TWU. AA denies that Martin sent a petition. Viewing the facts in a light most favorable to Martin and drawing inferences from the facts in his favor, we will assume that Martin's counsel sent a  petition for arbitration to AA and TWU with the June 11 letters.

The contract repudiation exception applies "when the conduct of the employer amounts to a repudiation of [the CBA's] contractual procedures." *Vaca*, 386 U.S. at 185. Martin argues that AA repudiated the arbitration provisions of the CBA by ignoring his June 11 petition. This argument depends on whether Martin had a right to file a petition for arbitration individually, without participation from TWU. We hold that he does not have an individual right to pursue arbitration.

Martin contends that the RLA provides airline employees with a statutory right to pursue arbitration individually before an airline's system board of adjustment.[4] We disagree. The RLA provides *railroad employees* the right to pursue arbitration individually before the National Railroad Adjustment Board. 45 U.S.C. § 153 First (j). However, the RLA specifically provides that § 153 is not applicable to air carriers. 45 U.S.C. §§ 181 and 182; s*ee also Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.*, 415 F.2d 493, 498 (8th Cir. 1969) (denying airline employees attorneys' fees under 45 U.S.C. § 153 First (p) because 45 U.S.C. §§ 181 and 182 specifically provide that § 153 is not applicable to air carriers). We will not ignore the express statutory exclusions in §§ 181 and 182 in order to apply § 153 to the airline industry.

Even if we were to assume for the sake of argument that Martin had an individual right to pursue arbitration, he has failed to show repudiation on the part of AA. Martin alleges AA ignored his individual petition for arbitration. However, simply alleging AA ignored his petition is not enough to show repudiation. Martin offers no evidence that AA knew he intended to pursue arbitration without the

---

[4]Raised for the first time in one sentence in his reply brief, Martin claims that he also had a contractual right under the CBA to pursue arbitration on his own. We will not consider an issue first raised in a reply brief, absent some reason given by the appellant for failing to raise and brief the issue in his opening brief. *United States v. Darden*, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995). Martin has not offered any explanation, and we will not consider the issue.

assistance of TWU but refused arbitration proceedings to him nonetheless. For example, Martin's June 11 letter to AA does not reference his petition and does not suggest Martin intended to pursue arbitration on his own. Furthermore, AA did not receive Martin's alleged individual petition in accordance with the arbitration procedures set forth in Article 32 of the CBA–the petition came directly from Martin, not from the International TWU as required. In addition, the record does not show that Martin ever revoked his authorization of TWU to act as his representative in the disposition of his grievance. Most telling, after TWU withdrew Martin's union-backed petition, Martin took no further action to pursue with AA his individual request for arbitration before filing the instant action.

### 3.    Futility Exception

The futility exception applies "where the effort to proceed formally with contractual or administrative remedies would be wholly futile." *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330 (1969). Martin contends that, because AA ignored his individual petition for arbitration and because TWU withdrew his union-backed petition after the deadline for filing a petition, any subsequent attempt to seek arbitration would have been futile. This argument fails because we hold Martin did not have an individual right to pursue arbitration.

### 4.    *"Childs"* Exception

In *Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees*, 831 F.2d 429 (3d Cir. 1987), the Third Circuit recognized another exception to RLA preemption. The court held that "an employee may sue his [employer] in federal court where, because of a union's breach of its duty of fair representation, the employee cannot obtain meaningful relief before the [board of adjustment]." *Id.* at 430. Martin argues that the *Childs* exception applies in his case because TWU's withdrawal of his union-backed petition for arbitration after the filing

deadline caused him to lose his right to pursue arbitration on his own. As with the futility exception, this argument also fails because we hold Martin did not have an individual right to pursue arbitration.

### III. Conclusion

Viewing the record in the light most favorable to Martin, we conclude that TWU did not breach its duty of fair representation. In addition, resolution of Martin's claim against AA lies within the jurisdiction of AA's System Board of Adjustment because no exceptions to RLA preemption apply in this case.

For the foregoing reasons, the judgment of the district court is affirmed.

_____