Leroy "Bud" BENSEL,
et al., Plaintiffs,

v.

ALLIED PILOTS ASSOCIATION, Air Line Pilots Association, American Airlines, Inc., and TWA Airlines, LLC, Defendants.

Civil Action No. 02–2917(JEI).

United States District Court,
D. New Jersey.

July 18, 2003.

Cureton, Caplan, Hunt, Scaramella &
Clark, P.C. by Jerald R. Cureton, Esq.,
Anthony Valenti, Esq., H. Thomas Hunt,
Esq., Michael J. Wietrzychowski, Esq.,
Tara A. Mosier, Esq., Delran, NJ, for
Plaintiffs.

Jennings Sigmond, by James Katz, Esq., Cherry Hill, NJ, James & Hoffman, P.C. by Edgar N. James, Esq., Steven K. Hoffman, Esq., Kathy L. Krieger, Esq., Washington, DC, for Defendant Allied Pilots Association.

Archer & Greiner, P.C. by John C. Connell, Esq., Melissa Wheatcroft, Esq., Haddonfield, NJ, Katz & Ranzman, P.C. by Daniel M. Katz, Esq., Washington, DC, for Defendant Air Line Pilots Association.

Morgan, Lewis & Bockius, LLP by Joseph A. Piesco, Jr., Esq., Alfred J. Lechner, Jr., Esq., Princeton, NJ, for Defendants American Airlines, Inc. and TWA Airlines, LLC.

## OPINION

IRENAS, Senior District Judge.

Presently before the Court are motions of all three Defendants to dismiss the second amended restated complaint. In addition, Plaintiffs have filed a cross-motion to dismiss Count X of their second amended restated complaint without prejudice. In both the motion papers brought before this Court and during oral argument, matters outside of the pleadings have been presented to the Court. Accordingly, as required under Fed.R.Civ.P. 12(c), the Court will treat all motions as motions for summary judgment rather than motions to dismiss. The Court will grant the Defendants' motions and will dismiss on all counts.

## I.

After several years of failing to make a profit, on January 9, 2001, Trans World Airlines, Inc. ("TWA") entered into an agreement with Defendant American Airlines, Inc. ("American") whereby American agreed to purchase the majority of TWA's assets following TWA's filing for Chapter 11 bankruptcy protection. TWA made such a filing the following day, January 10, 2001. As a condition of the purchase agreement, American agreed to hire almost all of TWA's unionized employees provided that certain labor protective provisions in their various contracts were eliminated.

One of those provisions concerned the right of TWA's pilots to bring to arbitration issues of seniority integration in the event of a purchase of TWA or merger of TWA with another airline. These rights are also known as Allegheny–Mohawk rights, in reference to an earlier airline merger. American indicated that it would not proceed with its purchase of TWA unless this seniority integration provision was eliminated.[1] TWA's pilots were represented by Defendant Air Line Pilots Association ("ALPA"), through its TWA Master Executive Council ("TWA MEC") unit.[2] Under American's collective bargaining agreement with its pilots, represented by Defendant Allied Pilots Association ("APA"), the seniority of any new pilots to American, due to an acquisition by American, would begin to accrue only at the moment that the pilots began working for American.

The TWA MEC resisted waiving its seniority protections, and on March 15, 2001, TWA filed a motion under 11 U.S.C. § 1113 with the Bankruptcy Court seeking to abrogate the seniority provisions in its collective bargaining agreement with

---

**1.** During oral argument the parties spent a significant amount of time arguing over the question of whether American would have backed out of its agreement to purchase the TWA assets had ALPA not agreed to the waiver of the seniority integration rights. For purposes of the motions before this Court, however, that question is irrelevant, particularly as it relates to statute of limitations issues.

**2.** Some members of the class of Plaintiffs in this case were also members of the TWA MEC.

ALPA. In response, on April 2, 2001, the TWA MEC passed a resolution waiving its seniority provisions in exchange for a letter from American in which American promised to "use its reasonable best efforts" with APA to "secure a fair and equitable process for the integration of seniority." On April 6, 2001, the Bankruptcy Court entered a stipulation and order withdrawing the § 1113 motion and formalizing the waiver agreement.[3]

On April 9, 2001, ALPA and the TWA MEC entered into a transition agreement with what would become, upon completion of the asset purchase by American, TWA Airlines, LLC ("TWA–LLC"). TWA–LLC would be a wholly owned subsidiary of American. Under that agreement, the majority of the provisions of the collective bargaining agreement between ALPA and TWA would remain in effect until such time as TWA–LLC and American were declared a "single carrier" by the National Mediation Board ("NMB"). In addition, ALPA would continue to remain the exclusive representative of the TWA–LLC pilots until the "single carrier" declaration. The next day, on April 10, 2001, American's purchase of TWA's assets closed and TWA–LLC began operations as a separate air carrier.

Between at least February and August of 2001, the TWA MEC and APA negotiated with each other over seniority integration. No agreement was reached between the parties. On November 8, 2001, APA and American reached an independent agreement on seniority integration of former TWA pilots, known as Supplement CC. Under Supplement CC, some TWA pilots did receive credit for their seniority, and certain captains and first officer positions were guaranteed for former TWA

pilots at the remaining pilot base for TWA–LLC pilots, in St. Louis, Missouri. It is likely that the impact upon the airline industry of September 11, 2001, and the knowledge of the parties that layoffs were probably inevitable, had a significant influence on the negotiations between American and APA.

On November 9, 2001, APA filed a petition with the NMB seeking the declaration of "single carrier" status. ALPA opposed this petition, but on March 5, 2002, the NMB declared that TWA–LLC and American were a "single carrier." On April 3, 2002, after ALPA declined to submit an application to become the bargaining representative for the combined pilot group, the NMB certified APA as the sole bargaining agent for all American pilots and Supplement CC became effective. Following this declaration, ALPA pursued a grievance against American, through arbitration, alleging that American violated the promise it made to ALPA in the letter it wrote concurrently with the waiver agreement. The grievance alleged that American did not use its "reasonable best efforts" to protect the TWA–LLC pilots' seniority protections, as it had agreed to do in its letter. Through the arbitration, ALPA sought the nullification of Supplement CC. The arbitrator, in a decision dated April 18, 2002, rejected the grievance and found for American.

This matter originally appeared before the Court when APA filed an action, on June 19, 2002, against class representative Bensel, the Aviation Workers Rights Foundation, Inc., and American, seeking a declaratory judgment that it did not owe a duty of fair representation to the class of former TWA–LLC pilots and that Supple-

---

**3.** There is a great deal of uncertainty as to what the result would have been had American gone through with its purchase of the TWA assets, but ALPA not waived its seniority integration protections. Of course, it was precisely this uncertainly that most likely influenced American to request the waiver by ALPA.

ment CC was binding and valid. On September 3, 2002, a class action was initiated by a virtually identical class against ALPA. On October 3, 2002, the class filed an answer in the original matter, along with counterclaims and cross-claims against APA, ALPA, American, and TWA–LLC. Pursuant to a series of consent orders agreed to by all parties, the parties were realigned with the class as Plaintiffs and ALPA, APA, American, and TWA–LLC as Defendants. The class filed a second amended restated complaint against the four Defendants on January 27, 2003. The Court's order dismissing the original action preserved the original filing dates for statute of limitations purposes.

The second amended restated complaint alleges breach of the duty of fair representation by ALPA (Count I), breach of the duty of fair representation by APA (Count II), breach of fiduciary duties and duty to treat with certified representative by APA, ALPA, American, and TWA–LLC (Count III), breach of the obligation to assert every reasonable opportunity and maintain agreements and to negotiate in good faith by American and TWA–LLC (Count IV), tortuous and malicious interference by APA, American, and TWA–LLC (Count V), fraudulent misrepresentation by APA, American, and TWA–LLC (Count VI), breach of contract and tortuous interference by APA, American, and TWA–LLC (Count VII), breach of the duty of good faith and fair dealing and tortuous interference by APA and American (Count VIII), and conspiracy by APA, ALPA, American, and TWA–LLC (Count IX). In Count X, the Plaintiffs seek to enforce an arbitration award. All four Defendants have filed motions to dismiss on all claims against them, which the Court will treat as summary judgment motions.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

### A.

Plaintiffs allege in Count I that ALPA violated its duty of fair representation ("DFR") under the Railway Labor Act, 45 U.S.C. § 151 et seq. (the "RLA"). DFR claims under the RLA are subject to a six month statute of limitations. *Miklavic v. USAir, Inc.*, 21 F.3d 551, 556 (3d Cir.1994); *Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188, 1194 (3d Cir.1984). The limitations period begins to run from the date of the execution of the challenged agreement. *Local Lodge No. 1424 v. Nat'l Labor Relations Bd.*, 362 U.S. 411, 415–16, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) ("*Bryan Manufacturing*"); *see also United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1273 (7th Cir.1985) (holding that in a DFR suit against a union, in this case also ALPA, the statute

of limitations began to run when the relevant supplemental agreement was signed).

The general thrust of Plaintiffs' allegations in Count I is that:

> [i]n causing the Class to waive their Allegheny–Mohawk rights, agree to a settlement of the bankruptcy 1113 motion and enter into the TWA–LLC Transition Agreement with TWA–LLC, all of which resulted in the Class becoming purportedly bound by the unfair and oppressive terms of Supplement CC, ALPA through its representatives, coerced the TWA pilots and made and permitted to be made false misrepresentations to the TWA–MEC which they knew to be false and which induced their capitulation. (Second Am. Restated Compl. ¶ 101.)

Plaintiffs go on to enumerate various ways in which they were "coerced." It must be noted that the Plaintiffs are not making any claim against ALPA regarding Supplement CC, instead they are making a claim regarding their waiver of their seniority integration rights, which later led to the implementation of Supplement CC.

Plaintiffs also detail other alleged DFR violations, most of which are simply the logical result of the earlier waiver. These include "[f]ailing to require American and TWA–LLC to negotiate the terms of seniority integration and the terms and conditions of the TWA–Pilots employment with ALPA while ALPA remained the certified collective bargaining agent for the Class" and "[p]ermitting American and TWA–LLC to require the TWA–MEC to negotiate seniority integration with APA."

(Second Am. Restated Compl. ¶ 107.) The failure to require negotiations with ALPA really occurred when that right was bargained away at the time of the waiver, as once the seniority integration provisions had been waived, it is questionable what was left to be bargained over. There can be no question that the requirement that the TWA–MEC negotiate directly with APA was a direct result of the waiver agreement. Plaintiffs cannot argue that the date of the actual negotiations is relevant for limitations purposes, as a "continuing violation," since a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cowell v. Palmer Township*, 263 F.3d 286, 293 (3d Cir.2001) (quoting *Ocean Acres Ltd. v. Dare County Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)). The negotiations themselves between the TWA MEC and APA, and the failure to negotiate between TWA–LLC and ALPA, were both "continual ill effects" of the original violation.[4]

The date of the resolution waiving the seniority integration provisions was April 2, 2001, and the date of the Bankruptcy Court approval of the agreement and withdrawal of the § 1113 motion was April 6, 2001. For statute of limitations purposes, Plaintiffs had six months from April 2, 2001, or at the latest April 6, 2001, to file any action challenging the waiver agreement. Plaintiffs did not file any claims against ALPA until September 3, 2002. Plaintiffs cannot argue that at the time of the waiver they were not aware of the harm that would occur, since it stands

---

4. Even if the Court were to consider the failure to require TWA–LLC and American to negotiate the terms of seniority integration directly with ALPA to be a separate alleged DFR breach, independent from the waiver agreement, it would still fail on statute of limitations grounds. Supplement CC was agreed to on November 8, 2001. Certainly by that point there was nothing left, in terms of the issue of seniority integration, for ALPA to negotiate with TWA–LLC or American. Plaintiffs did not file their claims against ALPA until September 3, 2002, more than six months after the November 8, 2001 signing of Supplement CC.

to reason that the bargaining away of seniority rights, and the agreement on the process that would be used to determine seniority integration, clearly put the TWA pilots in a weak position compared to the American pilots and could have led to no other final conclusion but a reduction in their seniority integration rights. *See May v. Shuttle, Inc.*, 129 F.3d 165, 177 (D.C.Cir.1997) (stating that the limitations period begins to run when plaintiffs knew or should have known of their injury). In any case, when the subject of a DFR allegation is a labor agreement, as is the case here with the waiver, it is the date of the agreement that is important. On its face, Count I fails for statute of limitations reasons.

 Plaintiffs argue that the presence of an ongoing arbitration proceeding, finally decided on April 18, 2002, effectively tolled the limitations period under the "rays of hope" doctrine. Under this doctrine, as long as there are "rays of hope" that the union will arbitrate the employee's grievance, or that an arbitrator's decision is pending, the limitations period does not commence until the arbitrator's decision is announced. *Childs v. Pennsylvania Fed'n Bhd. of Maintenance Way Employees*, 831 F.2d 429, 434 (3d Cir.1987); *see also Whittle v. Local 641, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO*, 56 F.3d 487, 490 (3d Cir.1995).

 This doctrine, however, applies only when the alleged DFR breach of the union is directly related to the instant arbitration proceeding. *See Childs*, 831 F.2d at 434 (quoting *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986) by stating "where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the the [sic] employee learns of the arbitra-

tor's award."). In this case, the arbitration proceeding was not related to an employee grievance. Instead, it was a challenge to Supplement CC and American's role in negotiating that agreement. The goal of the arbitration was to have Supplement CC, not the waiver agreement, overturned on grounds that American violated the waiver agreement. In the arbitration, the waiver agreement itself was not challenged. Plaintiffs have therefore not alleged a DFR breach by ALPA related to that arbitration. In fact, Plaintiffs primary allegation of a DFR breach is related to the seniority waiver, not to the subsequent implementation of Supplement CC. Therefore, the "rays of hope" doctrine does not apply in this case.

 There are a few isolated charges in Count I that are not related to the waiver decision. Plaintiffs allege that ALPA should have sought representational rights of the combined pilot group and that ALPA should have challenged the certification of APA as the collective bargaining agent for the combined pilot group. This is basically one allegation, that ALPA did not attempt to become the collective bargaining representative to the combined pilot group. This is an isolated DFR allegation that is unrelated to the others, for seniority integration issues had already been decided long before ALPA could have attempted to become the combined pilot group representative. Unfortunately for Plaintiffs, there is no precedent for a holding that the failure of a union to attempt to become the collective bargaining representative for a group of employees constitutes a breach of the duty of fair representation. *See Dycus v. N.L.R.B.*, 615 F.2d 820, 826 n. 2 (9th Cir.1980) (stating that a union's withdrawal as bargaining agent does not constitute a DFR breach). Accordingly,

these provisions of Count I must be dismissed on summary judgment.

█ Plaintiffs, in Count I, also claim that ALPA breached its DFR obligations when it failed to challenge Supplement CC, following its approval. The Plaintiffs would have had ALPA legally challenge an agreement entered into between American and its pilots, represented by APA. While Supplement CC did affect the TWA–LLC pilots, in reality it was an agreement between American and APA, affecting a change in the collective bargaining agreement between those two entities. The fact that American and APA were able to come to such an agreement without involving ALPA or the TWA–MEC is directly related to the TWA–MEC waiving the TWA–LLC pilots' seniority protections. This indicates that this aspect of Count I should also be dismissed on statute of limitations grounds. In addition, ALPA would have had no legal basis for bringing a suit challenging Supplement CC, as there is no DFR right of one union to challenge an agreement legally signed by another union and its employer. ALPA's decision not to bring a futile challenge to Supplement CC cannot constitute a DFR breach. In fact, ALPA did bring the one action, the arbitration grievance against American, that it did have as a viable option to eliminate Supplement CC. This claim must be dismissed under Rule 12(b)(6), because no DFR breach has been alleged and because the claim is time barred.

█ Plaintiffs also argue a DFR breach in Count I against ALPA for failing to take action to enforce an arbitration award issued on May 26, 2002. As ALPA's DFR obligations terminated on April 3, 2002, when APA was named the exclusive bargaining representative for the combined pilot group, this claim must be dismissed. Finally, the generic claim that ALPA "[o]therwise fail[ed] to take action to protect the seniority and jobs of the Class and otherwise act[ed] in a manner adverse to the Class' interest," cannot succeed on its own, as it does not allege any specific DFR breach against ALPA. Consequently, the entirety of Count I must be dismissed for either reasons of timeliness or failure to actually state a DFR breach.

### B.

█ In Count II of Plaintiffs' second amended restated complaint they allege a DFR breach by APA. The primary allegations in Count II concern alleged DFR breaches prior to APA's certification as the collective bargaining agent for the combined pilot group on April 3, 2002. While there are allegations that APA has breached its DFR obligations since April 3, 2002, these allegations are either too general in nature to specify any actual DFR breach (Second Am. Restated Compl. ¶ 126), or simply state that APA "continues to this day to fail to negotiate a fair and equitable integration of the TWA pilots." (Second Am. Restated Compl. ¶ 125.) As there was nothing to negotiate once Supplement CC became effective, this allegation fails to state any DFR breach.

█ The remainder of Count II must be dismissed because APA simply did not owe the Plaintiffs any duty of fair representation under the RLA prior to April 3, 2002. Instead it was ALPA, as the TWA–LLC pilots' exclusive representative, that owed that duty. The duty of fair representation arises out of a union's role as the exclusive bargaining representative for an employee unit. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In this case, ALPA was the exclusive representative of the TWA pilots until the NMB's certification of APA as the representative. It is the NMB that has the exclusive authority to certify who is the exclusive representative of a group of employees. *Switchmen's Union of North*

*America v. Nat'l Mediation Bd.,* 320 U.S. 297, 303, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

As the NMB did not certify APA as the representative for the TWA pilots until April 3, 2002, APA did not owe any duty of fair representation to the Plaintiffs until that date. *See Dycus,* 615 F.2d at 827 ("[a] labor organization that is not the exclusive representative of a bargaining unit ... owes no duty of fair representation to the members of the unit"). Plaintiffs' attempts to argue case law where unions have been held to owe a duty of fair representation to non-members fails for the simple reason that the non-members in those cases were still members of the bargaining unit. *See, e.g. Wallace Corp. v. N.L.R.B.,* 323 U.S. 248, 255, 65 S.Ct. 238, 89 L.Ed. 216 (1944). In this case, the bargaining unit of TWA–LLC pilots was represented by ALPA, not APA. In very similar circumstances, the 9th Circuit held that, in a merger between Reno Air and American, Reno Air flight attendants were not owed DFR obligations by the union for American flight attendants until the NMB certified the American flight attendants' union as the exclusive bargaining agent for both sets of flight attendants. *McNamara–Blad v. Ass'n of Prof'l Flight Attendants,* 275 F.3d 1165 (9th Cir.2002). Plaintiffs' allegations in Count II must be dismissed.

### C.

Count III of Plaintiffs' second amended restated complaint is against all four Defendants. There is nothing in the language of Count III, however, that alleges any complaint against ALPA. Therefore, as a preliminary matter, Count III must be dismissed against ALPA.

The majority of Count III alleges actions attributable to TWA–LLC and American. In particular, Plaintiffs allege violations of the RLA and its requirement that the carrier "treat," or negotiate with, the collective bargaining representative of the carrier. 45 U.S.C. § 152 Ninth. As the APA is not a carrier, it could not have violated such a duty. The language of Claim III primarily details alleged failures of Defendants American and TWA–LLC to negotiate directly with ALPA the terms of Supplement CC and the seniority integration of the TWA pilots. These allegations regarding "duty to treat" are therefore not relevant to APA.

Plaintiffs do allege, in Count III, breach of fiduciary duties against APA. They allege that APA, "in negotiating with ALPA ... owed the Class a fiduciary duty of good faith and to treat the Class fairly." (Second Am. Restated Compl. ¶ 136.) There is no such duty of good faith detailed in the RLA. Instead, this is simply a restatement of the Plaintiffs' allegations against APA in Count II, that Plaintiff breached its duty of fair representation. This is a separate claim from one arguing a failure to "treat" with ALPA, and altering the language used in the Count does not change the fact that the same complaint as in Count II is being alleged. While Plaintiffs do not argue in their submissions to the Court that they are really asserting a state law ground in Count III, had they done so that argument would be rejected, for "one cannot avoid federal preemption of alleged state law claims by artfully phrasing the language in the complaint." *Johnson v. United Food and Commercial Workers, Int'l Union Local No. 23,* 828 F.2d 961, 967 (3d Cir.1987). Therefore, for the reasons set forth previously as to why Count II will be dismissed, the allegations in Count III against APA must be dismissed.

TWA–LLC and American argue that Count III (and Count IV) must be dismissed for lack of standing. Plaintiffs' allegation in Count III is that Defendants failed to "treat" with their representative

at the time, ALPA, as required under 45 U.S.C. § 152 Ninth. Under the RLA, employees have the right to "bargain collectively through representatives of their own choosing." 45 U.S.C. § 152 Fourth. The language of the RLA implies that there can only be one representative at one time for a group of employees. 45 U.S.C. § 152 Ninth (stating that if there is a dispute the carrier must "treat" with the representative certified by the NMB). TWA–LLC and American argue that only certified representatives have standing under 45 U.S.C. § 152 to bring a cause of action. While the Third Circuit has not ruled on this issue, the Sixth Circuit has held that there is no express or implied right of action conferred upon an uncertified union under the RLA. *Adams v. Federal Express Corp.,* 547 F.2d 319, 322 (6th Cir. 1976).

 This Court finds that under the RLA the Plaintiffs do not have standing. There is no express provision of the RLA providing for a private cause of action. Therefore, it is imperative that the Court determine whether there is an implied private cause of action. The focus of any inquiry into whether a private cause of action can be implied is on two factors: whether the plaintiff is a member of the class whose benefit the statute was intended, and whether there is evidence of Congressional intent to create a cause of action. *Mallenbaum v. Adelphia Communications Corp.,* 74 F.3d 465, 469 (3d Cir. 1996); *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The Plaintiffs in this case are not within the definition of the class that the statute is designed to protect. The carrier is directed to "treat with the representative so certified as the representative of the craft or class for the purposes of this chapter." 45 U.S.C. § 152 Ninth. Under the RLA, it is clearly ALPA that was the appropriate representative that the duty to "treat" applied to. Plaintiffs do not dispute that their complaint is that the Defendants did not "treat" with ALPA. Consequently, it is ALPA, certified representative of the TWA–LLC pilots, that the statute is intended to benefit. The statute does not state that the carrier must "treat" with its employees, but rather with their representative. If any disgruntled employee could bring a private cause of action under the RLA alleging a failure to "treat," then the purpose of the statute, to provide for an organized process of negotiation between one employee representative and the employer, would be undermined. ALPA was that representative, and it is to ALPA that the private cause of action must accrue.[5] Consequently, Plaintiffs lack standing under the RLA to bring Count III regarding a breach of the duty to "treat".

The language of the statute, while it may imply a Congressional intent to create a private cause of action, does not imply that Congress intended to create a private cause of action for any employee or group declaring itself to be a representative of the relevant employees. The provisions of 45 U.S.C. § 152 indicate that employees will designate a representative and that representative will conduct negotiations

---

**5.** This holding can be easily distinguished from the unpublished holding of *People Express Pilot Merger Comm. v. Texas Air Corp.,* 1987 WL 18450 (D.N.J.1987). In that case, the court held that the plaintiffs were the proper representative for RLA purposes and could bring suit, even though they were not the certified union for the pilots. However, in *People Express,* the pilots were non-union and there was no competing group representing them on seniority issues. In the instant case, the pilots have had representation through ALPA, and then APA, on the seniority integration issues during the entire merger process.

with their employer. If Congress intended to create a private cause of action, it must be the representative for the employee group that the cause of action was intended to benefit. Count III will be dismissed on summary judgment.

### D.

In Count IV, brought against TWA–LLC and American, Plaintiffs assert a breach of the obligation to exert every reasonable effort to assert every reasonable opportunity and maintain agreements and to negotiate in good faith. Plaintiffs claim, in Count IV, that this is a duty found in 45 U.S.C. § 152 First. (Second Am. Restated Compl. ¶ 143.) However, the actual language of § 152 First is that "it shall be the duty of all carriers ... to exert every reasonable effort to make and maintain agreements ... and to settle all disputes ... between the carrier and the employees thereof." Nowhere in the RLA is there an explicit duty to negotiate in good faith, although this is certainly implied throughout § 152, particularly in 45 U.S.C. § 152 Second ("[a]ll disputes ... shall be considered, and, if possible, decided ... in conference between representatives designated"). The duty to "treat" also may imply a duty to negotiate in good faith. However, both of these provisions do not provide a private cause of action for the Plaintiffs, as detailed by this Court above, since under both it is only ALPA that has an implied private cause of action.

In addition, in describing their claims in Count IV, Plaintiffs state that the basis for them is that "American and TWA–LLC refused to negotiate with the Class and its representative." (Second Am. Restated

Compl. ¶ 144.) Again, the only language in the RLA requiring negotiations refers to negotiations with the employees' designated representatives, in this case ALPA, and possibly after April 3, 2002, APA. For the same reasons detailed above, only the designated or certified representative of the employees has standing under the RLA to bring such claims. Accordingly, Count IV must also be dismissed.[6]

### E.

Counts V, VI, VII, VIII, and IX of the second amended restated complaint all allege state common law violations. Under well settled law, the RLA preempts such state law causes of action in labor disputes, and all five counts must be dismissed.

In the field of labor relations, the federal government enjoys wide preemptive power over state laws, and states may not regulate activities that federal labor laws protect or prohibit. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *see also Wisconsin Dep't of Indus., Labor & Human Relations v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986). This *Garmon* rule has been extended to cover the RLA. *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 380–81, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969); *see also May,* 129 F.3d at 177.

In this case, the duty of fair representation clearly preempts the state law claims alleged by Plaintiffs. The DFR obligation requires that the interests of union members be served "without hostili-

---

6. Even had this Court determined that Plaintiffs did have standing to bring Counts III and IV, it is likely that both Counts would have been dismissed based simply on the language of the RLA requirements. 45 U.S.C. § 152 involves duties between a carrier and its employees. According to the NMB, TWA–LLC and American were operating as separate carriers until March 5, 2002. Until that point in time, it is doubtful that American owed any duty under the RLA to the TWA–LLC pilots, or that TWA–LLC had any legal duty, or ability, to influence American's implementation of Supplement CC.

ty or discrimination toward any" and that discretion is exercised "with complete good faith and honesty" and "arbitrary conduct" is avoided. *Vaca,* 386 U.S. at 177, 87 S.Ct. 903. This is a broad federal assertion of power in the area of labor relations and it preempts all of the state law claims in Counts V through IX, which are in reality only variations of RLA DFR claims. Taken together and individually, they assert that the Defendants discriminated against the Plaintiffs, acted in bad faith and dishonestly towards the Plaintiffs, and that the Plaintiffs were treated arbitrarily.

In fact, all of the state law claims asserted have been ruled preempted under the RLA by other federal courts. Examples include tortuous and malicious interference (Count V), in the case of *Nellis v. Air Line Pilots Ass'n,* 15 F.3d 50, 51 (4th Cir.1994); fraudulent misrepresentation (Count VI), in *May,* 129 F.3d at 179 (claim of fraud); breach of contract (Count VII), in *Arnold v. Air Midwest, Inc.,* 1994 WL 247442 (D.Kan.1994); and breach of the duty of good faith and fair dealing (Count VIII), in *Carter v. Smith Food King,* 765 F.2d 916, 921 (9th Cir.1985). Count IX alleges common law conspiracy, which does not exist if the underlying allegations are dismissed.

Plaintiffs argue that since they are not alleging DFR violations again TWA–LLC and American, and if the Court, as it has, finds that APA owes no duty of fair representation to the Plaintiffs, that preemption does not apply. They argue that since the duty of fair representation does not apply to these Defendants, they should not receive the benefit of a preemption defense.[7]

■ Plaintiffs' argument fails to understand the justifications for the preemption doctrine. The doctrine applies precisely when state law conflicts with federal labor law. *Brotherhood of R.R. Trainmen,* 394 U.S. at 381, 89 S.Ct. 1109 ("[t]he determination of the permissible range of self-help 'cannot be left to the laws of the many States, for it would be fatal to the goals of the Act' if conduct were prohibited by state laws 'even though in furtherance of the federal scheme' ") (quoting *Int'l Ass'n of Machinists A.F.L.-C.I.O. v. Central Airlines, Inc.,* 372 U.S. 682, 691–92, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963)). The state law claims alleged by Plaintiffs are clearly preempted by the RLA's DFR requirements. Simply because the RLA may not find such conduct illegal does not mean that preemption is still not required. Counts V, VI, VII, VIII, and IX will be dismissed against all Defendants.[8]

### F.

■ All parties, including Plaintiffs, have made motions to dismiss or for summary judgment with regard to Count X. The Plaintiffs ask that the Count be dismissed without prejudice, while ALPA seeks dismissal with prejudice, APA seeks dismissal with or without prejudice but asks for attorneys' fees and costs, and TWA–LLC and American seek dismissal with prejudice. Count X seeks to enforce an arbitration award issued on May 26, 2002, regarding the closing of former TWA domicile bases in New York, Los Angeles, and San Francisco, and alleges that ALPA and APA have breached their DFR obligations by not acting to enforce the award. The arbitrator ruled in favor of the TWA pilots and awarded compensation, as well as ordering TWA–LLC to discuss with the

---

**7.** While uncommon, there are occasions when an employer can be sued for a DFR violation under the RLA. *See Sisco,* 732 F.2d at 1190. Plaintiffs have simply chosen not to bring such an allegation in this case.

**8.** American and TWA–LLC also seek dismissal of Count VII on grounds that it is a "minor dispute" and therefore must be dismissed under the RLA. As the Court has dismissed Count VII on preemption grounds, this argument will not be discussed.

pilots methods of utilizing those sites as satellites of the St. Louis domicile for a limited period of time.

On January 27, 2003, American filed a complaint with the United States District Court for the Northern District of Texas seeking to vacate the award. Later that same day the Plaintiffs filed their second amended restated complaint, which included Count X. Plaintiffs note that APA has determined that it will file a counterclaim in the Texas matter to enforce the arbitration award, and therefore they have filed a motion for summary judgment seeking to dismiss Count X. However, they seek to have such a dismissal be without prejudice, should APA fail to file and adequately defend the counterclaim.

As the arbitrator's award was handed down subsequent to ALPA being replaced by APA as the pilots' exclusive bargaining agent, ALPA did not owe any duty of fair representation to the Plaintiffs. Consequently, Count X will be dismissed against ALPA with prejudice.

■ As against APA, since the union has no objection to a dismissal without prejudice, the Court will dismiss Count X without prejudice. APA has also made a motion for attorneys' fees and costs. Courts do sometimes award fees when a plaintiff voluntarily dismisses an action without prejudice under Fed.R.Civ.P. 41(a)(2). *United States ex rel. Haskins v. Omega Inst., Inc.*, 25 F.Supp.2d 510, 515 (D.N.J.1998)(Brotman, J.). The relevant factors that a court must look at in determining whether to award fees are: (1) any excessive and duplicative expenses of a possible second litigation; (2) the effort and expense occurred by the defendant in preparing for trial; (3) the extent to which the litigation has progressed; and (4) the plaintiff's diligence in moving to dismiss. *United States ex rel. Haskins*, 25 F.Supp.2d at 516.

■ An analysis of these factors leads to the conclusion that an award of fees would not be appropriate in this case. There is unlikely to be a second litigation since APA seems to be fighting for the rights of its pilots in this matter, and there will most likely be no need for a second litigation. In addition, there would not be many duplicative expenses in a new litigation since the process here remains in its early stages. APA cannot have made significant effort or expense to prepare for trial on the issue in Count X. In fact, the matter here would seem to be a long way from trial, and has not even progressed to the discovery stage. In addition, Count X was filed on January 27, 2003, and Plaintiffs filed their motion to dismiss on April 7, 2003. This does not indicate that Plaintiffs have been dilatory in bringing their motion. Accordingly, the motion for attorneys' fees and costs will be denied.

TWA–LLC and American argue that Count X must be dismissed under the "first to file" rule. Under this rule, when there is concurrent jurisdiction in two federal district courts, the case filed first shall proceed and the second case must be dismissed. *See E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir.1988). Against TWA–LLC and American, Plaintiffs only seek to confirm the arbitration award. In the Northern District of Texas litigation, American has filed to vacate the award while APA will file a counterclaim to confirm the award. As against TWA–LLC and American, therefore, the two actions are virtually identical and the "first to file" rule will be followed by this Court. Count X, as against TWA–LLC and American, will be dismissed with prejudice.

**IV.**

For the reasons detailed in this opinion, all Counts in the Plaintiffs' second amended restated complaint will be dismissed.

Count X, as against Defendant APA only, will be dismissed without prejudice, and APA's motion for fees will be denied. The Court will issue an appropriate order.

### ORDER

This matter having appeared before the Court upon Defendants' motions to dismiss, Plaintiffs' motion to dismiss Count X without prejudice, and Plaintiffs' motion for attorney fees and costs, the Court having reviewed the submissions of the parties and having heard oral argument, for the reasons set forth in an opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *18th* day of July, 2003,

**ORDERED THAT:**

1. Defendants' motions to dismiss will be treated as motions for summary judgment and will be **GRANTED** as to Counts I, II, III, IV, V, VI, VII, VIII, and IX of the Plaintiffs' second amended restated complaint.

2. Defendants Air Line Pilots Association, American Airlines, Inc., and TWA Airlines, LLC's motions to dismiss Count X of the Plaintiffs' second amended restated complaint will be treated as motions for summary judgment and will be **GRANTED.**

3. Defendant Allied Pilots Association's motion to dismiss Count X of the second amended restated complaint will be treated as a motion for summary judgment and Count X will be **DISMISSED WITHOUT PREJUDICE** as to Allied Pilots Association only.

4. Plaintiffs' motion for attorney fees and costs will be **DENIED.**