FISHER, Circuit Judge,
dissenting.
I dissent because I disagree with the majority’s analysis of Count I. I join the majority’s affirmance of the remainder of the claims on appeal. But I would affirm the district court’s determination of the untimeliness of the Class’ claims in Count I asserting that the Air Line Pilots Association (“ALPA”) breached its duty of fair representation (“duty”) under the Railway Labor Act, 45 U.S.C. § 151, et. seq.
A fundamental premise of the majority opinion is that Supplement CC (the November 8, 2001 agreement between American’s pilots and American regarding seniority integration of former TWA pilots and American’s pilots) was not the inescapable result of the Class’ waiver of Allegheny-Mohawk labor protective provisions in April of 2001. The subject of the scope of the waiver and whether it included the right to bargain over seniority integration post-purchase was precisely why American required the waiver of those rights as a condition precedent to its purchase of TWA’s assets out of bankruptcy. This was to avoid conflict between the collective bargaining agreements applicable respectively to the American and TWA pilots regarding seniority (which absent the waiver contained irreconcilable seniority provisions).[6] Because the April 2001 waiver clearly and unmistakably included a waiver of the Class’ contractual right to arbitrate seniority integration issues and their right to bargain over seniority after American’s purchase of TWA, any claim that ALPA breached its duty of fair representation to the Class accrued at that time.
There were no rays of hope to extend the accrual of the duty of fair representation claims based on ALPA’s post-waiver actions or inaction. The waiver and its attendant agreements (the Transition Agreement between the Class pilots and TWA, LLC and the “best efforts” letter from American) eliminated ALPA’s ability to effectively bargain with either TWA, LLC or American for any seniority integration different from that which existed at the time of the waiver. Because of the limitations these agreements imposed upon ALPA’s ability to bargain with TWA, LLC[7] or American regarding seniority, any meaningful ray of hope was extinguished. The only actions that ALPA could take were collateral to the real issue — a desire by the TWA pilots to get that which was waived in April 2001 — the right to demand a fair and equitable se *324 niority integration. Consequently, the claim that ALPA breached its duty of fair representation is untimely and the district court’s grant of summary judgment should be affirmed.[8]
I.
The Class alleges in Count I that ALPA violated its duty of fair representation relating to ALPA’s representation of TWA pilots both prior and subsequent to American’s purchase of TWA out of bankruptcy. The Class contends that in April 2001, ALPA coerced the TWA Master Executive Council into waiving the TWA pilots’ contractual labor protective provision to arbitrate over seniority integration because of ALPA’s alleged interest in organizing the American pilots, who were then represented by the Allied Pilots Association. In its Second Amended Restated Complaint filed January 27, 2003, the Class pleaded for the first time additional duty claims, all of which flow from the waiver of the right to arbitrate seniority integration. Those claims are that ALPA: (1) failed to require American and TWA, LLC to negotiate the terms of the seniority integration with ALPA while ALPA remained the certified collective bargaining agent for the Class; (2) failed to take action to challenge Supplement CC though the agreement was entered into to control matters relating to rates of pay, rules and working conditions of the Class and was entered into with other than ALPA as the Class’ collective bargaining agent in violation of the Railway Labor Act; and (3) that ALPA permitted American and TWA, LLC to require the TWA Master Executive Council[9] to negotiate seniority integration with American’s pilots’s union, the Allied Pilots Association.
At the crux of the Class’ claims are the various agreements made on behalf of the TWA pilots in April of 2001 in relation to American’s purchase of TWA assets, which combined to prevent ALPA from negotiating seniority integration for the former TWA pilots. A brief recitation of the relevant agreements evidencing the scope of the waiver and events surrounding their execution is necessary to frame the accrual analysis.
II.
On January 9, 2001, American Airline subsidiary TWA, LLC agreed to purchase TWA assets out of bankruptcy. TWA’s January 10, 2001 filing for bankruptcy protection was part of the planned acquisition by American. But an essential condition of American’s purchase of the TWA assets was that American, which agreed to hire almost all of TWA’s unionized employees through its wholly-owned subsidiary TWA, LLC, required the elimination of labor protective provisions within TWA’s collective bargaining agreements with its unions. Specifically, American required the waiver of the right of TWA pilots to arbitrate seniority integration in the event of a purchase of TWA by another airline.
*325 TWA filed a motion in bankruptcy court on March 15, 2001, pursuant to 11 U.S.C. § 1113 seeking to abrogate the TWA-ALPA collective bargaining agreement for the pilots’ refusal to forego their seniority integration protections. The TWA pilots were faced with the choice of waiving their seniority integration protections or fighting to retain them at the risk of forcing TWA into liquidation. See In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir.2003). In response to the motion, the TWA Master Executive Council resolved to waive the seniority integration protections in exchange for American’s assurances that it would “use its reasonable best efforts” with Allied Pilots Association to “secure a fair and equitable process for the integration of seniority” upon the sale of TWA to American.[10]
TWA and its pilots’ Master Executive Council subsequently entered into a Stipulation approved by the Bankruptcy Court on April 6, 2001. Pursuant to that Stipulation, TWA withdrew its section 1113 motion and was authorized to eliminate the seniority integration protections from its pilot’s collective bargaining agreement. The terms of the Stipulation and the circumstances and import of the waiver of seniority integration protections were echoed in the April 3, 2001 announcement made to TWA pilots by Robert Pastore, President of the pilot’s Master Executive Council.
On April 9, 2001, the Bankruptcy Court approved the sale of TWA’s assets, resulting in the Class becoming employees of TWA, LLC. That same date, ALPA and TWA, LLC entered into a “Transition Agreement,” providing that ALPA would remain the exclusive bargaining representative for the former TWA pilots until the National Mediation Board found American and TWA, LLC to be a single carrier whose pilots were represented by the Allied Pilots Association. By its terms (set forth in Section 30), the Transition Agreement was not amendable during the transition period and would expire upon National Mediation Board certification of single carrier status. Section IB of the Transition Agreement further provided that TWA-LLC could modify the work rules and benefits as necessary upon 21-days notice in order to effect the transition of the former TWA pilots to American. Significantly, during that 21-day notice period, section IB specified that “in lieu of any bargaining obligations under the Railway Labor Act, TWA, LLC’s sole obligation shall be to confer with ALPA on all changes ...” and provide those changes in writing.
III.
Claims for breach of the duty of fair representation under the Railway Labor Act are subject to a six-month limitations period. Miklavic v. USAir, Inc., 21 F.3d 551, 556 (3d Cir.1994); Sisco v. Consolidated Rail Corp., 732 F.2d 1188 (3d Cir.1984) (applying DelCostello v. Int’l Brotherhood of Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). The district court concluded that the Class’ claims *326 against ALPA for breach of the duty of fair representation accrued at the latest by April 6, 2001, when the Stipulation waiving seniority integration rights was entered by the Bankruptcy Court. The court reasoned that since the resolution waiving seniority integration rights was agreed to on April 2, 2001, and approved by the Bankruptcy Court on April 6, 2001, the claims against ALPA, which were not filed until September 3, 2002, clearly were beyond the six-month limitations period. In so holding, the district court relied upon Local Lodge No. 1424 v. National Labor Relations Board, 362 U.S. 411, 415-17, 80 5.Ct. 822, 4 L.Ed.2d 832 (1960) for the proposition that the limitations period begins to run from the date of the execution of the challenged agreement. Bensel v. Allied Pilots Ass’n, 271 F.Supp.2d 616, 622 (D.N.J.2003).
The majority concluded that Local Lodge bars the Class’ claims only if the limitations period associated with ALPA’s initial breach of its duty accrued on April 6, 2001, and that all subsequent breaches of its duty were “inescapably grounded” in that breach. It did not find that these conditions were met. Local Lodge, 362 U.S. at 422, 80 S.Ct. 822. Unlike the majority, however, I conclude that both of these conditions were met to warrant application of Local Lodge for accrual purposes. I disagree that Supplement CC[11] and the allegations that ALPA breached its duty of fair representation post-waiver constituted breaches separate from the initial breach of ALPA’s duty — that it coerced the pilots into waiving their seniority integration protections. Rather, I conclude, as the district court recognized, that the waiver subsumed any rights to bargain for seniority integration from April 2001 forward. That includes the claims that subsequent to the waiver, ALPA breached its duty by failing to challenge Supplement CC, failing to negotiate seniority integration with the Allied Pilots Association during the transition period, and permitting American to dictate that seniority integration would be negotiated between the two pilot’s unions.
A.
The waiver must be viewed not as a singular act in April 2001 but as a series of agreements that effectively waived any right to bargain for seniority integration with either TWA, LLC or American. First, the TWA Master Executive Council agreed to waive seniority integration protections in exchange for TWA’s withdrawal of its bankruptcy motion to eliminate its contractual obligations with its unions. That waiver also was conditioned on American’s promise to use its “best efforts” to facilitate an agreement between the two pilot’s unions regarding seniority integration. But that promise by American represented an obligation merely to support the process of negotiation between the dueling unions in their attempt to reach an agreement concerning a “fair and equitable” seniority integration. It was not an obligation for American to bargain *327 with ALPA or the Master Executive Council regarding a “fair and equitable” seniority integration. That is what was forfeited in April 2001 when the seniority integration protections were waived.
Second, the Transition Agreement by its terms was not amendable and expired by its own terms once TWA, LLC and American are deemed a single carrier by the National Mediation Board. Nor did it require that TWA, LLC engage in any bargaining with ALPA regarding changes to work rules or benefits during the transition period. All that was required was written notice 21 days before any changes were to be made.
Given these agreements, the claims concerning ALPA’s breach of its duty subsequent to the waiver are in fact “inescapably grounded” in the waiver and the attendant agreements of April of 2001. All that was left was a promise by American to use its “best efforts” to support union to union negotiations regarding seniority integration. The claims that ALPA breached its duty of fair representation thus are inescapably grounded in ALPA’s conduct in negotiating the waiver. Consequently, the claims are untimely.[12]
B.
The waiver clearly and unequivocally included the right to bargain with either TWA, LLC or American regarding seniority. See Gullickson v. Southwest Airline Pilots’ Association, 87 F.3d 1176 (10th Cir.1996).
Gullickson involved the purchase of Morris Air, whose pilots were non-union, by Southwest Airlines. Southwest sought a waiver of the scope provisions of its agreement with the Southwest pilots’ union. Despite the fact that Morris pilots were not represented by it, the Southwest pilots’ union met with Morris pilot representatives and obtained a list of priorities regarding job security. Thereafter, the union met with the Southwest and reached a Letter Agreement containing a scope of waiver clause as well as seniority provisions giving Morris pilots an effective seniority date of January 1, 1994. Morris pilots attended various informational meetings conducted by the Southwest pilots’ union regarding the terms of that Letter Agreement.
In February 1994, the Southwest pilots’ union became the collective bargaining representative for the Morris pilots. Three months later, Morris pilots ratified a collective bargaining agreement. On June 29, 1994, Morris pilots sued the Southwest pilots’ union and Southwest for breach of the duty of fair representation resulting from the endtailing of the Morris pilots in the course of a seniority integration and failure to permit Morris pilots an opportunity to ratify the Letter Agreement. But the Court found that the language of the SouthwesNMorris collective *328 bargaining agreement was sufficiently clear to inform Morris pilots that ratification of it necessarily ratified the effect of the Letter of Agreement between the Southwest pilots union and Southwest regarding seniority integration.
Likewise, as the comments of TWA Master Executive Council President Robert Pastore to the entire pilot group reveal, the TWA Master Executive Council took the best option available — agreeing to the waiver to facilitate the purchase of TWA by American and to save as many contractual provisions as possible while still having to negotiate seniority integration with the American pilots’ union during the transition period. This, when coupled with the language of the various agreements (as discussed supra at part III.A), supports the conclusion that there was a clear and unmistakable waiver of the right to bargain for seniority. But “[a] voluntary choice may not be withdrawn because the choice was an effort to make the best of a bad situation. Adult pilots, of sound mind and well aware of the consequences of their acts, must expect to keep contracts, even when they wish they could have made better deals.” Rakestraw v. United Airlines, Inc., 981 F.2d 1524, 1534 (7th Cir.1992).
IV.
Nor would I apply the “ray of hope” doctrine to toll the accrual of the claims that ALPA breached its duty until April 18, 2002, the date the arbitrator of the System Board of Adjustment denied the Class’ challenge based on American’s “best efforts” promise. See Childs v. Penn. Fed’n Brotherhood of Maintenance Way Employees, 831 F.2d 429, 434 (3d Cir.1987) (holding that duty of fair representation claim does not accrue while the union continues to actively represent the employee and offers rays of hope that the employee’s cause will prevail). The Class contends, and the majority accepted, that ALPA’s arbitration of American’s alleged breach of its “best efforts” letter necessarily impacted the viability of Supplement CC, which could have resulted in the invalidation of Supplement CC.
The fundamental flaw in the majority’s application of the Childs “ray of hope” doctrine is its reliance on the premise that Supplement CC was not the inescapable result of the waiver of the seniority integration protections in April of 2001. “Rays of hope” cannot sustain a claim when the waiver of seniority integration protections gutted any chance that ALPA could continue to represent the Class to reach a more advantageous seniority integration agreement. For the reasons stated previously, the waiver of seniority integration protections, and the attendant agreements executed in early April 2001, eliminated both contractual and any statutory duties to bargain for seniority thereafter. In other words, it stripped ALPA of any real negotiating strength or bargaining leverage with respect to the seniority integration of former TWA pilots within American. Moreover, even if ALPA prevailed in the arbitration concerning the “best efforts” letter, and American was found to have breached its “best efforts” promise, it still would not eliminate the fact that the Transition Agreement between ALPA and TWA, LLC was not amendable and precluded negotiations with TWA, LLC concerning seniority integration. Nor would a victory require American to bargain with ALPA concerning seniority integration. In order for a “ray of hope” to exist, there must be a meaningful hope that it can remedy the employee’s dissatisfaction.
Childs was premised on promoting the federal labor policies of: (1) avoiding unnecessary federal litigation; (2) allowing *329 fall play of the administrative procedure; and (3) sparing the employee the Hobson’s choice between letting the statute of limitations run and antagonizing his best advocate. 831 F.2d at 434-35, 436. As to avoiding unnecessary federal litigation, Childs recognized that “[i]f the union can indeed remedy the cause of the employee’s dissatisfaction, it should be allowed to do so, thus obviating federal judicial involvement.” Childs, 831 F.2d at 434; see also Whittle v. Local 641, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 56 F.3d 487 (3d Cir.1995).
Childs and Whittle both dealt with claims to overturn unfavorable arbitration awards on grounds that the union committed errors in the arbitration proceedings. In Childs, the union declined to represent Childs before the Board due to a lack of corroborative evidence which Childs claimed to have provided to the Union during the grievance process. In Whittle, the union allegedly failed to prosecute a seniority case vigorously before the joint local committee. Those decisions are premised upon the policy to resolve disputes where possible through arbitration, thus obviating the need for judicial involvement if the union is able to remedy the cause to the employees’ satisfaction. See Childs, 831 F.2d at 434. The claims in those cases therefore did not accrue for statute of limitations purposes until the employee learned of the arbitrator’s award. Otherwise, there was no way for employees to know whether they suffered any loss from the union’s alleged breach until the arbitration decision issued. Whittle, 56 F.3d at 490.
Here, however, the cause of the employee’s dissatisfaction was not American’s breach of its “best efforts” obligation. Rather, the Class sought exactly that which it sacrificed in order to facilitate American’s purchase of TWA — the right to arbitraté or otherwise dictate the seniority integration process. Extending a “ray of hope” here, where the waiver extinguished any meaningful prospect that the TWA pilots could control seniority integration, is not warranted on this record.
IV.
For the foregoing reasons, I would affirm the judgment of the district court granting summary judgment on Count I regarding all of the alleged breaches of the duty of fair representation. I concur in the remainder of the majority opinion.

. The collective bargaining agreement between TWA and its pilots contained Allegheny-Mohawk labor protective provisions including the right to arbitrate seniority integration in the event of a merger with another airline. See Allegheny-Mohawk Merger Case, 59 C.A.B. 22, 31-40 (1972). The collective bargaining agreement between American and its pilots (represented by the Allied Pilots Association) contained a provision that pilots new to American due to the acquisition of another airline will not begin to accrue seniority until they begin working for American (endtailing). Seniority governs rates of pay, flight schedules and routes, type of airplane flown, whether pilots fly as captain or first officer and their eligibility for furlough and recall.

. TWA, LLC was the wholly-owned subsidiary of American that employed the former TWA pilots upon American’s purchase of TWA's assets from bankruptcy.

. Summary judgment arose in the context of the Appellees' motion to dismiss the second amended class complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the parties relied on information outside the pleadings, the 12(b)(6) motion was converted to a motion for summary judgment. The Class filed a Rule 56(f) affidavit in opposition to the motion. However, that Affidavit did not provide with any specificity the information sought to be discovered to defeat the pending motion. But the question of the propriety of the conversion in light of the Rule 56 motion is not before us.

. TWA pilots were represented by ALPA through the Master Executive Council comprised of TWA pilots, including some members of the Class.

. The letter by American to TWA Master Executive Council President Robert Pastore provides:
I understand that you wish to have confirmation of American's commitment on its part with respect to process for resolving integration of seniority. For its part American Airlines, Inc. ("American”) agrees to use its reasonable best efforts with its labor organization representing the airline pilots craft or class to secure a fair and equitable process for the integration of seniority. In that regard, American will engage a facilitator to organize meetings with the labor organizations representing airline pilots and American and TWA-LLC. American agrees to adopt the procedures that result from this process for seniority integration.

. From February to October 2001, the Allied Pilots Association and the TWA Master Executive Council attempted to negotiate seniority integration terms, even using the services of a mediator paid for by American. When those negotiations failed to produce an agreement regarding seniority integration, American and its pilots executed a seniority integration agreement known as Supplement CC on November 8, 2001, which called for some dovetailing of TWA pilots among the American pilots for seniority purposes. That agreement amended Section 13 of the original agreement between American and its pilots that otherwise would have governed seniority integration. Supplement CC would not become effective until single-carrier designation and certification of a collective bargaining agent for the combined pilot class.

. The majority finds that the claims that ALPA also breached its duty post-waiver are timely using "relation back” under Fed. R.Civ.P. 15(c). However, that analysis is premised on the finding that the initial claim that ALPA breached its duty filed on September 3, 2002 — that ALPA coerced the TWA Master Executive Council into waiving seniority integration given ALPA’s interest in organizing the American pilots — was timely filed. For the reasons stated within this opinion, I diverge from the majority’s conclusion that "rays of hope” tolled the accrual of the initial claim that ALPA breached its duty until April 2002. Rather, because that breach of duty claim accrued at the time of the waiver, relation back cannot save the claims that ALPA breached it duty subsequent to the waiver. The initial complaint must have been timely in order for relation back to save the claims that ALPA breached its duty subsequent to the waiver. See e.g., Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir.2001).